In re BAY AREA CITIZENS AGAINST
LAWSUIT ABUSE, Relator.

No. 97–0812.

Supreme Court of Texas.

Argued Feb. 3, 1998.

Decided Dec. 10, 1998.

William W. Pierson, Myra K. Morris, Corpus Christi, Chester J. Makowski, Houston, for Relator.

Darrell L. Barger, Patricia ann Shackelford, Gonzalo Joseph Barrientos, Corpus Christi, David W. Holman, Houston, David L. Perry, Corpus Christi, for Respondent.

ABBOTT, Justice, delivered the opinion for a unanimous Court.

In this mandamus proceeding, Bay Area Citizens Against Lawsuit Abuse ("BACALA") complains of two discovery orders requiring BACALA to produce certain documents and answer certain deposition questions concerning the identities of its contributors. BACALA further complains that the trial court improperly denied its plea to the jurisdiction. We find that BACALA has failed to show that it lacks an adequate remedy by appeal from the trial court's denial of the plea to the jurisdiction; however, we conditionally grant mandamus relief with respect to those portions of the discovery orders requiring BACALA to disclose its contributors' identities.

## I

## Background

In 1950, the City of Corpus Christi deeded property located at 1201 N. Shoreline to the Corpus Christi Chamber of Commerce. The deed provided that the Chamber would:

(a) ... erect upon the property herein conveyed a permanent building ... to house said Chamber ...;

(b) ... maintain ... a permanent all-year Tourist Information Bureau in said Building, and provide such literature as is customarily employed ... extolling the benefits and advantages of the City of Corpus Christi;

(c) ... provide in said building such space ..., for the displaying of exhibits, depicting the commercial, industrial, agricultural, mineral and maritime assets of the City....

The deed also contained the following reversion clause:

[I]n the event said grantee shall ... permit the use of said land or premises, or any part thereof, for any purpose other than herein provided without the written permission of the grantor, the property conveyed hereby together with all improvements thereon shall revert to the City of Corpus Christi....

In accordance with the deed, the Chamber built and has maintained a building on the property.

In response to the business community's support for tort reform, the Chamber created a lawsuit abuse committee. In 1994, the Chamber entered a joint venture agreement merging its lawsuit abuse committee with BACALA.

BACALA is a non-profit corporation organized under Texas law and qualifying under section 501(c)(6) of the Internal Revenue Code. According to its articles of incorporation, BACALA's purpose is to "promote common business interests and to better business conditions in the Corpus Christi Bay Area by effecting a basic change in the

public's attitude toward liability and litigation so as to end this strangling lawsuit crisis and prevent its recurrence." BACALA has a board of trustees, but does not have members. It does, however, have contributors.

Soon after the BACALA/Chamber joint venture, the Chamber merged into the Greater Corpus Christi Business Alliance ("the Alliance"). The Alliance is a private, non-profit Texas corporation comprising the Chamber, the Convention and Visitors Bureau, and the Economic Development Corporation. Pursuant to a consulting agreement with the City, the Alliance took responsibility for tourist promotion, began receiving substantial tax monies from the City to promote convention and tourism,[1] and moved into the Chamber building on the Shoreline property.

Although BACALA maintained a separate identity from the Alliance, the Alliance allowed BACALA to use rent-free office space on the Shoreline property from July 1994 to April 1997. During this time, BACALA used an Alliance telephone extension and other utilities, reimbursing the Alliance for long distance and postage. The building was divided such that departments funded by public tax monies were located on one side of the building while privately funded entities, including BACALA, were on the other. Other entities that have occupied the Shoreline building include Beautify Corpus Christi, SCORE, and the Minority Business Opportunity Commission.

A few citizens and taxpayers of Corpus Christi (collectively "taxpayers"), sued the Alliance, BACALA, and the City of Corpus Christi seeking to restrain and enjoin BACALA's and the Alliance's allegedly improper use of the Shoreline property and public tax revenues "for private special interests." The taxpayers allege that the City's transfer of public funds to the Alliance and its authorizing the Alliance's and BACALA's use of the Shoreline property constitute "the granting of public monies and other things of value to the Defendant corporations for special private purposes" in violation of Article III, Section 52 of the Texas Constitution.[2] The

---

1. The Convention and Visitors Bureau began receiving hotel/motel tax revenues from the City.

The Chamber and the Economic Development Corporation remained *privately funded.*

2. "[T]he Legislature shall have no power to au-

taxpayers also seek to recover all allegedly illegal and unauthorized payments previously made by the City to the Alliance and BACA-LA, and to determine whether the Shoreline property has reverted to the City under the terms of the deed.

## II

### Procedural History

BACALA filed a plea to the jurisdiction, arguing that the taxpayers lacked standing to sue BACALA. BACALA argued that because the taxpayers could not properly sue for the recovery of *past* expenditures and because BACALA had already vacated the Shoreline property, the trial court lacked subject matter jurisdiction. The trial court denied BACALA's plea.

During discovery, the taxpayers noticed the deposition of Kim Keef, BACALA's executive director and designated representative, and attached a subpoena duces tecum. In response, BACALA filed a motion to quash and for protective order, arguing that the taxpayers' claim for illegal expenditures of monies by the Alliance did not directly involve BACALA, and therefore BACALA should not be subject to harassing and burdensome discovery requests. The trial court ordered BACALA to produce Keef for deposition and to preserve all objections at that time. The court also ruled that disputes concerning the production of documents should be deferred until after the deposition. The deposition went forward as ordered; however, BACALA's counsel objected to approximately thirty questions on the basis that they violated BACALA's constitutional rights. The taxpayers filed a motion to compel answers to the deposition questions, arguing that the information sought concerning, among other things, BACALA's sources of funding and contributions was necessary "to determine the propriety of the use of public funds and public property."

The taxpayers also served a deposition on written questions on BACALA's custodian of records, requesting a broad range of BACA-LA's financial documents. BACALA pro-

duced some of the requested documents; however, it filed a motion for protective order asserting that some of the discovery requests violated the United States and Texas Constitutions, were overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, not relevant, and exceeded the scope of permissible discovery. In response, the taxpayers filed a motion to compel production of all documents and things sought in the subpoena duces tecum and the deposition on written questions. The motion to compel included BACALA's contributor lists.

The trial court ordered Keef to answer certain questions concerning BACALA's mailing and contributor lists, the creative sources and funding for BACALA's advertisements, any affiliation with other Citizens Against Lawsuit Abuse organizations, any use of out-of-state phone banks, and any relationship to a private industry. The trial court further ordered BACALA to produce "the list of donors and amounts of donations for the years 1994, 1995, and 1996," subject to a protective order limiting the information's use to preparation for this litigation.

BACALA filed a motion for leave to file a writ of mandamus with the Thirteenth Court of Appeals. The court of appeals granted an emergency stay and requested briefing, but subsequently denied the motion. BACALA then filed a petition for writ of mandamus with this Court. In its petition, BACALA complains of (1) the trial court's order denying BACALA's plea to the jurisdiction, (2) the order that BACALA produce a list of donors and their donation amounts, and (3) the order that Keef answer deposition questions concerning BACALA's donor list.

## III

### Plea to the Jurisdiction

■ BACALA asserts that the taxpayers do not have standing to bring suit against BACALA and therefore the trial court abused its discretion by denying its plea to the jurisdiction. We hold that BACALA is not entitled to mandamus relief for the trial

thorize any ... city ... to lend its credit or to grant public money or thing of value in aid of, or

to any individual, association or corporation whatsoever...." TEX. CONST. art. III, § 52.

court's denial of its plea to the jurisdiction because BACALA has failed to show that it lacks an adequate remedy by appeal.

■ A party seeking relief must establish that it has no adequate remedy by appeal. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). Generally, "appeal is an adequate remedy to address a trial court's denial of a plea to the jurisdiction, and therefore a writ of mandamus will not issue to correct it." *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 306, 308–09 (Tex.1994); *see also Bell Helicopter Textron, Inc. v. Walker*, 787 S.W.2d 954, 955 (Tex.1990) (quoting *Abor v. Black*, 695 S.W.2d 564, 566–67 (Tex.1985)). Although there may be some extraordinary situations in which remedy by appeal is inadequate and mandamus relief is justified, BACALA has made no showing that this case involves such a situation. *Bell Helicopter*, 787 S.W.2d at 955. Because BACALA has failed to show that it lacks an adequate remedy by appeal for the trial court's denial of its plea to the jurisdiction, we need not address whether the trial court abused its discretion in denying the plea. *See Canadian Helicopters*, 876 S.W.2d at 310.

## IV

### Discovery Orders

BACALA complains of the trial court's discovery orders requiring BACALA to provide deposition testimony and produce documents disclosing the names of BACALA's contributors.[3] BACALA argues that the names of its contributors are not relevant to the litigation and are protected by the associational rights guaranteed by the First Amendment of the United States Constitution.[4]

■ When a discovery order violates First Amendment rights, the party seeking mandamus generally has no adequate remedy by appeal. *See Tilton v. Moye*, 869 S.W.2d 955, 958 (Tex.1994) (citing *Walker*, 827 S.W.2d at 843). Because the portions of the trial court's orders directing BACALA to disclose its contributors' names violate the First Amendment, we conditionally grant mandamus relief.

### A

### Freedom of Association

■ BACALA asserts that the trial court's orders compelling disclosure of its contributors' names impermissibly burden both its own and its contributors' First Amendment rights. Freedom of association for the purpose of advancing ideas and airing grievances is a fundamental liberty guaranteed by the First Amendment.[5] *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Compelled disclosure of the identities of an organization's members or contributors may have a chilling effect on the organization's contributors as well as on the organization's own activity. *See Buckley v. Valeo*, 424 U.S. 1, 66–68, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). For this reason, the First Amendment requires that a compelling state interest be shown before a court may order disclosure of membership in an organization engaged in the advocacy of particular beliefs. *Tilton*, 869 S.W.2d at 956 (citing *NAACP*, 357 U.S. at 462–63, 78 S.Ct. 1163). " '[I]t is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the

3. Although the trial court ordered Keef to answer deposition questions covering a variety of topics, BACALA complains only of the portion of the order requiring Keef to testify about BACALA's donor list. Similarly, although the trial court ordered BACALA to produce a number of different documents, BACALA complains only of the portion of the trial court's order requiring BACALA to produce its donor lists for 1994, 1995, and 1996. Therefore, the other portions of the discovery orders are not before us.

4. Although BACALA asserted associational rights under Article I, Section 27 of the Texas Constitu-

tion, BACALA cited authority only under the U.S. Constitution. Consequently, we do not consider the extent to which Article I, Section 27 provides an independent basis for protection. *See Tilton v. Moye*, 869 S.W.2d 955, 956 n. 2 (Tex.1994).

5. U.S. CONST. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

effect of curtailing the freedom to associate is subject to the closest scrutiny.'" *Id.* (quoting *NAACP*, 357 U.S. at 460–61, 78 S.Ct. 1163).

## B

## Burden on Right of Association

To secure an order preventing the disclosure of its donor lists, BACALA bears the initial burden to make a *prima facie* showing that the trial court's orders will burden First Amendment rights. *See Buckley*, 424 U.S. at 74, 96 S.Ct. 612; *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1355 (2d Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990); *Brock v. Local 375, Plumbers Int'l Union*, 860 F.2d 346, 349–50 (9th Cir.1988). Many courts have grappled with the question of what constitutes a sufficient showing of harm to First Amendment rights. *Brock*, 860 F.2d at 350 n. 1 (listing cases). In order to guarantee protection of a party's First Amendment rights, however, the burden must be light. *Terry*, 886 F.2d at 1355 ("[I]n making out a *prima facie* case of harm the burden is light."). The Supreme Court has recognized that "unduly strict requirements of proof could impose a heavy burden" and that a party "must be allowed sufficient flexibility in the proof of injury to assure a fair consideration of [its] claim." *Buckley*, 424 U.S. at 74, 96 S.Ct. 612. "The evidence offered need show only a reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties." *Id.* The proof may include "specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself." *Id.*

At the hearing on the taxpayers' motion to compel and BACALA's motion for protective order, BACALA submitted several letters as evidence that its supporters had been subject to boycott threats. The first letter was a law firm's resignation from the Chamber because of the Chamber's position concerning tort reform. A second letter prevailed upon local lawyers to urge their clients not to do business with BACALA supporters, listing Chamber members who voted to support BACALA and major contributors to BACALA. This letter stated that BACALA "is basically about limiting and destroying our right to trial by jury." Another letter, from a lawyer to a local district judge, explained that the lawyer would not be contributing to a judicial conference because the conference would be held at a barbecue restaurant owned by a BACALA supporter. This letter referred to BACALA as "an organization which has degradated [sic] our judiciary, our judicial system and the citizens who spend their valuable time serving so faithfully on our juries" and asserted that the author "simply will not knowingly do business with anyone who so attacks our judicial system or the good people who run and participate in it." A final letter, from a lawyer to the president of the U.S. Lexington Museum on the Bay, stated that the lawyer would not support the association because its deputy executive director was BACALA's treasurer. BACALA also offered testimonial evidence that many contributors donate money on an anonymous basis and that some fear an adverse impact on their businesses if they are identified as BACALA supporters.

The taxpayers respond that they introduced evidence to show that disclosure would result in no such reprisals. For example, one of the taxpayers' lawyers, the author of the letter concerning the barbecue restaurant, testified that he had recently eaten at the barbecue restaurant and that he and the restaurant owner were long-time friends. The taxpayers do not dispute, however, that the threats were made or that they were intended when made; they merely claim that the threats should no longer be taken seriously.

The taxpayers further argue that BACALA's evidence of retaliation is too speculative to satisfy its burden of proof. *See Buckley*, 424 U.S. at 70, 96 S.Ct. 612. In *Buckley*, the Court concluded that the appellants' evidence of retaliation was "highly speculative" and therefore *NAACP v. Alabama* was inapposite. *Id.* at 69–73, 96 S.Ct. 612. The *Buckley* appellants relied primarily on the "clearly articulated fears of individuals, well experi-

enced in the political process" and testimonial evidence that "one or two persons refused to make contributions because of the possibility of disclosure." *Id.* at 71–72, 96 S.Ct. 612. The appellants offered no stronger evidence of threats or harassment. *Id.* at 72 n. 88, 96 S.Ct. 612.

BACALA's evidence is stronger than that offered by the appellants in *Buckley.* As opposed to mere subjective fears and testimony that some donors would refuse to donate, BACALA's evidence demonstrates that individuals opposed to BACALA's agenda had boycotted the business establishments of persons affiliated with BACALA and encouraged others to do the same. This is the type of "specific evidence of past or present harassment of members due to their associational ties" and "harassment directed against the organization" recognized by the Court in *Buckley. Buckley,* 424 U.S. at 74, 96 S.Ct. 612. The evidence shows actual, non-speculative hostility and demonstrates a reasonable probability of economic reprisals against contributors that may burden First Amendment rights. *Cf. NAACP,* 357 U.S. at 462, 78 S.Ct. 1163. Under such circumstances, compelled disclosure of BACALA's contributor lists may dissuade contributors and hinder BACALA's and its contributors' ability to pursue collective advocacy of their beliefs. *See id.* at 462–63, 78 S.Ct. 1163.

The taxpayers also argue that the alleged harm falls short of the type of retaliation shown by parties in other cases such as *Brown v. Socialist Workers '74 Campaign Comm.,* 459 U.S. 87, 99, 103 S.Ct. 416, 74 L.Ed.2d 250 (1982), and *NAACP v. Alabama,* in which courts protected associations from disclosing supporters' names. In *Brown,* for example, the campaign committee introduced evidence of harassment including threatening phone calls, hate mail, destruction of property, and physical violence. We agree with the taxpayers that the threat to BACALA is not as severe as that demonstrated in cases such as *Brown* or *NAACP.* However, such a factual record of violent past harassment is not the only situation in which courts have recognized a potential infringement on an association's First Amendment rights. *Local 1814, Int'l Longshoremen's Assoc. v. Water-* *front Comm'n of New York Harbor,* 667 F.2d 267, 271 (2d Cir.1981); *see also Community–Service Broadcasting of Mid–America, Inc. v. Federal Communications Comm'n,* 593 F.2d 1102, 1118 (D.C.Cir.1978) ("The absence of such concrete evidence [of harassment], however, does not mandate dismissal of the claim out of hand; rather it is the task of the court to evaluate the likelihood of any chilling effect...."). In *Local 1814,* the court found it sufficient that longshoremen contributors would perceive a connection between contributing to a political fund and being called before the Waterfront Commission and would therefore discontinue their contributions. *Local 1814,* 667 F.2d at 272; *see also Tilton,* 869 S.W.2d at 956 (holding trial court's order of production of ministry's contributor lists unconstitutional when requests were aimed at persons sharing particular beliefs and the harm alleged was that contributors could be subpoenaed for questioning). And in *Pollard v. Roberts,* the Supreme Court affirmed the district court's recognition of the potential infringement on First Amendment rights that could result from political and economic reprisals, even though no factual showing of such reprisals had been made:

> While there is no evidence of record in this case that any individuals have as yet been subjected to reprisals on account of the contributions in question, it would be naive not to recognize that the disclosure of the identities of contributors ... would subject at least some of them to *potential economic or political reprisals* of greater or lesser severity....
>
> ... Disclosure or threat of disclosure well may tend to discourage both membership and contributions thus producing financial and political injury to the party affected.

*Pollard v. Roberts,* 283 F.Supp. 248, 258 (E.D.Ark.), *aff'd. per curiam,* 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968) (emphasis added).

In sum, BACALA has offered factual, non-speculative evidence of economic and political reprisals against itself and its contributors. This evidence is sufficient to satisfy its burden of proof.

## C

### Compelling State Interest

The taxpayers argue that the information covered by the trial court's orders is relevant to their case and thus discoverable. When a litigant seeks, through the power of the courts, to discover information protected by the First Amendment, the litigant must make a showing of need beyond its mere relevance. *See, e.g., Federal Election Comm'n v. Larouche Campaign,* 817 F.2d 233, 234–35 (2d Cir.1987); *Tilton,* 869 S.W.2d at 956. The litigant seeking information must demonstrate that the information required to be disclosed is substantially related to a compelling government interest. *See Buckley,* 424 U.S. at 64, 96 S.Ct. 612; *Gibson v. Florida Legislative Investigation Comm.,* 372 U.S. 539, 546, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); *Ex parte Lowe,* 887 S.W.2d 1, 3 (Tex. 1994).

The taxpayers admit that their interest in BACALA's donor information "is based solely on the relevance such information has to the disputed issues in this lawsuit—the proper use of public funds and the nature of the use being made of public property." We hold that the taxpayers have failed to show a substantial relation between the identity of BACALA's contributors and the taxpayers' goal of exposing and preventing the alleged misuse of the property and public funds.

The taxpayers assert that BACALA's donor information is necessary to determine whether public monies and property were used in violation of the Texas Constitution, Article III, Section 52(a) and whether the Shoreline property reverted to the City. The taxpayers have alleged that public tax money was improperly conveyed to BACALA through the Alliance. In their motion to compel, the taxpayers argued that they sought the financial records of BACALA and "the member entities of the Alliance" to "reconstruct the path of public, tax payer money through the various accounts held by the Alliance and its member entities for the years 1994, 1995 and 1996." However, the names of BACALA's contributors other than the Alliance are not relevant to such a determination, especially in light of the heightened relevance standard required by the Constitution. *See Pollard,* 283 F.Supp. at 257 ("Even if it be conceded that defendant's investigation might be advanced if he knew that certain individuals had made contributions . . ., we do not think that that fact would make relevant the disclosure of all of the contributors. . . ."). Further, the Alliance has already provided records of any monies it has given to BACALA.

Concerning the use of the property, the taxpayers assert that if the source of BACALA's funding was not the local citizenry of Corpus Christi, but instead was large, out-of-town corporations anticipating litigation in the area and attempting to influence the public and the local jury pool, that would be "highly relevant to the issue of whether public property and funds are being misused." They also argue that the list of contributors is relevant to debunk BACALA's position that its activities benefit local business and industry. Assuming that the taxpayers' claims are tenable, disclosure of the contributors' names is still not justified. The location of BACALA's contributors does not help to determine whether public property and funds are being misused: where the money comes from sheds no light on how it is used. Nor do the location and identity of BACALA's contributors bear a substantial relation to a determination of whether the Alliance has violated the deed, causing the property to revert to the City. Moreover, the remedy sought for the alleged misuse of the property is to prevent BACALA's further use of the building. BACALA has already vacated the property. Thus, disclosure of BACALA's contributors' names simply does not have a sufficient nexus to the taxpayers' interest in proving BACALA's and the Alliance's alleged wrongful use of the property and public funds. *See Pollard,* 283 F.Supp. at 258 ("[I]n order to overcome the prohibitions of [the First] Amendment the defendant was required to make a far greater showing of relevancy and public interest in the disclosure than has been made here."). Accordingly, we hold that the trial court abused its discretion by ordering disclosure of BACA-

LA's donor lists.[6]

## D

### Corporate Donors

 The taxpayers alternatively contend that even if the donor lists in general are protected from disclosure, the names of BACALA's corporate donors may still be disclosed because corporations do not have First Amendment rights. The taxpayers argue that there is "no freedom of association claim for corporate donors" because "a corporation, being a creature of State, has no 'personal' constitutional rights that can be asserted on its behalf." To support their position, the taxpayers cite *Super X Drugs of Texas, Inc. v. State*, 505 S.W.2d 333, 337 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ), in which the court held that a corporation has no Fifth Amendment right against self-incrimination because that right is a personal right that belongs to individuals, not corporations. Thus, the taxpayers conclude, "BACALA cannot assert 'freedom of association' claims on behalf of its corporate donors and mandamus cannot extend to those donors."

The Supreme Court's decision in *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), undermines the taxpayers' argument. In *Bellotti*, the Supreme Court rejected the argument that corporations, as creatures of the state, have only those rights granted them by the state, noting that "such an extreme position could not be reconciled either with the many decisions holding state laws invalid under the Fourteenth Amendment when they infringe protected speech by corporate bodies, or with decisions affording corporations the protection of constitutional guarantees other than the First Amendment." *Id.* at 778 n. 14, 98 S.Ct. 1407 (citations omitted).

The Court further recognized that "[c]orporate identity has been determinative in several decisions denying corporations certain constitutional rights, such as the privilege against compulsory self-incrimination, ... but this is not because the States are free to define the rights of their creatures without constitutional limit." *Id.* at 779 n. 14, 98 S.Ct. 1407.

The taxpayers' argument is further undermined by the Supreme Court's holding that "[t]he proper question ... is not whether corporations 'have' First Amendment rights and, if so, whether they are coextensive with those of natural persons. Instead, the question must be whether the [state action] abridges expression that the First Amendment was meant to protect." *Bellotti*, 435 U.S. at 776, 98 S.Ct. 1407. Thus, the taxpayers' focus on whether BACALA's corporate contributors have constitutional rights is misplaced. Instead, the proper question is whether disclosure of their identities "abridges expression that the First Amendment was meant to protect." *Id.*

When considering whether disclosure will burden First Amendment rights, the focus should be broader than the rights of the corporate contributors alone. *Cf. Bellotti*, 435 U.S. at 776, 98 S.Ct. 1407 ("The Constitution often protects interests broader than those of the party seeking their vindication."). Besides discouraging corporations from donating to BACALA, disclosure of the corporate contributors' names would also burden BACALA's and its individual contributors' rights of association. BACALA's evidence of political and economic reprisals against its supporters is sufficient to indicate a reasonable probability that disclosure of its corporate contributors' names would decrease the number of contributions made to BACALA by those corporations. *See Pol-*

---

**6.** The taxpayers assert that the trial court's protective order, which limits the use of the donor information to litigation purposes only, alleviates any First Amendment concerns. A protective order allows a court to grant disclosure rights while deferring to First Amendment concerns. *Ex parte Lowe*, 887 S.W.2d at 4. Especially when the information is sought by private litigants, the existence of a protective order limiting dissemination of the information to litigation purposes

may be a factor to be considered when determining whether disclosure is justified, although the protective order "itself does not justify disclosure." *Id.* However, the protective order in this case does not alleviate BACALA's First Amendment concerns because the taxpayers' lawyers, who would receive the information under the protective order, are the very persons who have made some of the boycott threats.

*lard,* 283 F.Supp. at 258 ("Disclosure or threat of disclosure well may tend to discourage both membership and contributions thus producing financial and political injury to the party affected."); *United States Servicemen's Fund v. Eastland,* 488 F.2d 1252, 1265–68 (D.C.Cir.1973) (when disclosure results in a drop in contributions, that disclosure violates a corporation's First Amendment rights of association and assembly), *rev'd on other grounds,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975). *Cf. NAACP,* 357 U.S. at 459–60, 78 S.Ct. 1163 ("The reasonable likelihood that the Association itself through diminished financial support and membership may be adversely affected if production is compelled is a further factor pointing towards our holding that petitioner has standing to complain of the production order on behalf of its members."). This, in turn, would burden the rights of individuals who were not dissuaded from contributing. *See Medrano v. Allee,* 347 F.Supp. 605, 619 (S.D.Tex.1972) (the right to assemble is in part a collective right, and abridgment of that right by dissuading others from exercising it effectively curtails its exercise by those who are not intimidated), *aff'd in part and vacated in part on other grounds,* 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974). As we stated previously, the taxpayers have failed to show a substantial relation between the identity of BACALA's contributors, corporate or otherwise, and the alleged misuse of the property to justify this burden on First Amendment rights.

## E

### The Texas Non–Profit Corporation Act

■ The taxpayers also argue that article 1396–2.23A of the Texas Non–Profit Corporation Act[7] requires BACALA to disclose all of its financial information, including the identities of its contributors. The taxpayers further argue that since BACALA voluntarily incorporated as a nonprofit corporation, it waived any constitutional rights it might have in protecting the identity of its contributors.

BACALA agrees that some financial records, such as financial statements and tax returns, are subject to disclosure under article 1396–2.23A. BACALA has produced those records to the taxpayers. However, BACALA and amici argue that article 1396–2.23A is unconstitutional if it also requires disclosure of BACALA's contributors.[8]

■ We should, if possible, interpret the statute in a manner that avoids constitutional infirmities. *Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 629 (Tex.1996). We must thus determine whether the interpretation of article 1396–2.23A urged by the taxpayers would render the statute unconstitutional.

■ When interpreting a statute we begin with the words of the statute itself. *Smith v. Clary Corp.,* 917 S.W.2d 796, 799 (Tex.1996). When interpreting civil statutes, we give words their ordinary meaning. TEX. GOV'T CODE § 312.002. Courts also look to legislative intent when construing a statute. *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex.1994). To determine legislative intent, courts may consider the language of the statute, the legislative history, the nature and object to be obtained, and the consequences that would follow from alternate constructions. *Id.; see also* TEX. GOV'T CODE § 312.005 ("In interpreting a statute, a court shall ... consider at all times the old law, the evil, and the remedy.").

Article 1396–2.23A is entitled "Financial Records and Annual Reports." It states that non-profit corporations "shall maintain current true and accurate financial records with full and correct entries made with respect to all financial transactions of the corporation, including all income and expenditures, in accordance with generally accepted accounting practices." TEX.REV.CIV. STAT. ANN. art. 1396–2.23A(A). Based on these records, a board of directors must annually prepare or

---

7. TEX.REV.CIV. STAT. ANN. art. 1396–2.23A (Vernon 1997).

8. In support of this proposition amicus briefs were submitted by the American Civil Liberties Union of Texas, other Citizens Against Lawsuit Abuse organizations, and a coalition of non-profit corporations, joined by the Texas Medical Association.

approve a report of the financial activity of the corporation for the preceding year. *Id.* art. 1396–2.23A(B). In addition, article 1396–2.23A requires that "[a]ll records, books, and annual reports of the financial activity of the corporation shall be kept at the registered office or principal office of the corporation ... and shall be available to the public for inspection and copying there during normal business hours." *Id.* art. 1396–2.23A(C).

The statute's directive that non-profit corporations maintain "financial records with full and correct entries made with respect to all financial transactions of the corporation, including all income and expenditures," suggests that more than just the amount received must be maintained. *Id.* art. 1396–2.23A(A). However, the statute does not expressly require that contributors' identities be made available to the public.

Looking to legislative intent, it appears that article 1396–2.23A was intended to remedy a specific problem: the lack of accountability regarding a non-profit corporation's use of funds solicited from the public. *Texas Appellate Practice & Educ. Resource Ctr. v. Patterson,* 902 S.W.2d 686, 689 (Tex.App.—Austin 1995, writ denied). The bill analysis provides relevant background information regarding article 1396–2.23A's purpose:

> During the last interim, the author attempted to conduct a study of a non-profit drug rehabilitation program in Houston. This program had been soliciting funds from the public and portrayed itself as a charitable endeavor. However, there were rumors that its funds were being used for investments in such businesses as nightclubs. During the six month investigation, the author of this bill was unable to determine how the program's funds were being used because the records were inadequate.

> A major recommendation from the study was that Texas law should be amended to require non-profit organizations soliciting funds from the public to keep adequate records showing how the funds were actually being used.

SENATE COMM. ON BUS. & INDUS., BILL ANALYSIS, Tex. S.B. 857, 65th Leg., R.S. (1977) (emphasis added). Thus, the purpose of the legislation was not to force non-profit corporations to identify the exact sources of their income; rather, it was to expose the nature of the expenditures of that money once received from the public and to make non-profit organizations accountable to their contributors for those expenditures. Thus, the seemingly broad scope of the statute's language is not matched by the legislative intent behind the statute.

The statute's uncertainty as to whether it requires disclosure of contributors leads us to conclude that it does not. The statute can be upheld as constitutional when interpreted as not requiring disclosure of contributors' names. If, however, the statute grants blanket access to all non-profit corporations' donor lists, it would violate the First Amendment in some circumstances, thus rendering it unconstitutional as applied in those circumstances.[9] In BACALA's case, compulsory disclosure would encroach on freedom of association. BACALA and amici are correct that the statute cannot constitutionally be applied to BACALA because there is no substantial relation between the information sought by the taxpayers (BACALA's contributors' identities) and a compelling state interest.[10] Because we must construe the Act to avoid such constitutional infirmities, *Barshop,* 925 S.W.2d at 629, we hold that the phrase "financial records" does not include the names of contributors or members. Therefore, article 1396–2.23A does not re-

**9.** *See, e.g., Familias Unidas v. Briscoe,* 619 F.2d 391, 398 (5th Cir.1980).

**10.** As stated *supra,* the Constitution requires that once a party makes a *prima facie* showing of harm from disclosure of contributors' identities, the party seeking to compel disclosure "must show convincingly a substantial relation between the information sought and a subject of overriding and compelling state interest." *Ex parte Lowe,* 887 S.W.2d at 3. The state interest served

by the statute is ensuring the accountability of non-profit corporations for expenditures of contributions. Even if this interest is a compelling state interest, there is no "substantial relation" between requiring disclosure of contributors' identities and ensuring such accountability. *See Pollard,* 283 F.Supp. at 257 (finding no showing that disclosure of contributors' identities was relevant to the state's unquestionably legitimate interest in preventing vote buying).

quire the blanket disclosure of contributors' names for public inspection.

\* \* \* \* \*

In sum, we deny BACALA's request for mandamus relief from the trial court's denial of its plea to the jurisdiction because BACALA has failed to show that it lacks an adequate remedy by appeal. However, the trial court's orders requiring BACALA to produce the names of its donors violates the First Amendment and BACALA has no adequate remedy by appeal. Therefore, we conditionally grant BACALA's petition for writ of mandamus in part. We direct the trial court to vacate those portions of its discovery orders requiring BACALA to disclose the identities of its donors. We are confident that the district court will comply; only if its fails to promptly do so will the writ issue.