**In re Jill MAURER, Relator.**

**No. 14–00–00007–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 15, 2000.

Rebecca E. Hamilton, Rockwall, Steven S. Newsom, Houston, for relators.

Tom Alexander, Houston, Hal S. Sumner, Dallas, for respondents.

Panel consists of Justices YATES, FOWLER, and EDELMAN.

## MAJORITY OPINION

WANDA McKEE FOWLER, Justice.

This mandamus proceeding arises out of a defamation suit filed by Vonessa and John Beaird against the Harris County Sheriff, Tommy Thomas. Relator, Jill Maurer, a non-party witness in the defamation suit, complains of the trial court's contempt judgment ordering her to answer certain questions and produce certain doc-

uments at her deposition. Specifically, she contends that the court's order violates her First Amendment right to freedom of association because it forces her to disclose the identity of members of an organization known as the "Citizens for Oversight Committee" ("the COC"). Because almost all of the answers and documents subject to the court's order do not violate relator's First Amendment rights, we deny mandamus relief in part.

## I. BACKGROUND

In March 1999, Vonessa Beaird was arrested by Harris County Deputy Sheriff, John Burton, for driving while intoxicated in the subdivision where she lived. Two months later, the Harris County District Attorney dropped the charges against Mrs. Beaird on insufficient evidence grounds. During a three-month period following Mrs. Beaird's arrest, the Katy Times published a series of ads run by the COC. Some of these ads solicited information from citizens on alleged incidents of abuse by the Harris County Sheriff's Department (HCSD). Other ads described specific incidents of alleged abuse by the HCSD against unidentified individuals, including individuals later identified as Mrs. Beaird and relator. In response to an ad describing one alleged incident, Sheriff Thomas wrote a letter to the editor of the Katy Times, apparently claiming that the HCSD's investigation revealed no wrongdoing.[1] The COC replied with an ad addressing alleged falsehoods in the Thomas letter and identifying Mrs. Beaird and Deputy Burton as the parties involved in the alleged incident. Based on the Thomas letter, the Beairds filed a defamation suit in the 61st Judicial District Court of Harris County against Sheriff Thomas, in his individual capacity. Sheriff Thomas counterclaimed for defamation against the Beairds, and Deputy Burton intervened, also asserting defamation against the

---

1. Although the Thomas letter is not part of the mandamus record, other documents in the record refer to the content of that letter.

Beairds. The Beairds eventually nonsuited their claims against Sheriff Thomas, but not before giving their deposition.

When questioned during their depositions, the Beairds professed little knowledge of the COC or the ads. Aside from identifying relator as the President of the COC, the Beairds could not identify any other members of the COC or anyone who supplied information for the ads, wrote the ads, delivered the ads to the Katy Times, or paid for the ads. At her own deposition taken in the presence of the trial court,[2] relator refused to answer these same questions or to produce documents under a subpoena *duces tecum* on grounds that they would require her to disclose members of the COC in violation of her First Amendment right to freedom of association.

On January 12, 2000, based on relator's refusal to answer questions or comply with the subpoena, the trial court entered a "judgment of contempt and order of commitment." The court ordered relator "to appear in the jury deliberation room of the 61st Judicial District Court on Friday, January 14, 2000 at 9:00 a.m." and ordered the Sheriff of Harris County to take custody of relator and hold her in the jury deliberation room until she (1) answered the questions propounded to her during her deposition, and (2) produced documents responsive to the subpoena *duces tecum.* The following day, relator filed this petition for writ of mandamus and motion for emergency relief. Because the court's order does not require relator to appear in the event that she sought mandamus relief, we denied relator's request for emergency relief. Responses filed solely by the respondent, the presiding judge of the 61st District Court of Harris County, request sanctions against relator.

Because this proceeding does not warrant sanctions, we now deny the respondent's request.

## II.  MANDAMUS

■ At the outset, we note that relator raises two issues: (1) "whether the identity of members of the [COC] is privileged information protected from discovery," and (2) "whether a party can be confined in the custody of an adverse party." Because relator does not brief this second issue, we need not address it.[3] In fact, while relator was found in contempt, she does not seek relief by writ of habeas corpus. Instead, characterizing the underlying matter as a discovery dispute, relator seeks relief solely by writ of mandamus.

■ Generally, mandamus relief is available if the trial court violates a duty imposed by law or clearly abuses its discretion, either in resolving factual issues or in determining legal issues, when there is no adequate remedy at law. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). When, as here, a discovery order potentially violates First Amendment rights, there is no adequate remedy by appeal and mandamus is appropriate. *See In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 375 (Tex.1998). Mandamus is also proper when the trial court erroneously orders the disclosure of privileged information which will materially affect the rights of the aggrieved party. *See Walker*, 827 S.W.2d at 843. Here, relator complains that the trial court's order erroneously compels her to disclose information privileged under the First Amendment. This is a proper complaint for mandamus review.

## III.  FIRST AMENDMENT CLAIM

### A.  Standard of Review

2.  Because of notice and discovery disputes, relator's deposition was taken in the courtroom.

3.  At oral argument, relator's counsel stated there was no time to brief this issue because the petition for writ of mandamus had to be filed "literally overnight." This proceeding has been pending for more than one month and submitted on oral argument. Although relator filed a supplemental petition, she has yet to address the "confinement" issue.

�as Relator contends that the information sought at her deposition by Sheriff Thomas and Deputy Burton required her to disclose the identity of members of the COC in violation of her First Amendment right to freedom of association. Freedom of association for the purpose of advancing ideas and airing grievances is a fundamental liberty guaranteed by the First Amendment. *See Bay Area Citizens*, 982 S.W.2d at 375 (citing *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)). Compelled disclosure of the identities of an organization's members or contributors may have a chilling effect on the organization's contributors as well as on the organization's own activities. *See id.* at 375. For this reason, the First Amendment requires that a compelling state interest be shown before a court may order disclosure of membership in an organization engaged in the advocacy of particular beliefs. *See id.; see also Tilton v. Moye*, 869 S.W.2d 955, 956 (Tex.1994). The party seeking to compel disclosure must show more than mere relevance, it "must show convincingly a substantial relation between the information sought and a subject of overriding and compelling state interest." *See Bay Area Citizens*, 982 S.W.2d at 381 n. 10 (quoting *Ex parte Lowe*, 887 S.W.2d 1, 3 (Tex.1994)). "It is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to closest scrutiny." *Bay Area Citizens*, 982 S.W.2d at 375–76 (quoting *NAACP*, 357 U.S. at 460–61, 78 S.Ct at 1171).

## B. The Discovery Order

▪ Turning to the discovery order, we first observe that "a court order which compels or restricts pretrial discovery constitutes state action which is subject to constitutional limitations." *See Kessell v. Bridewell*, 872 S.W.2d 837, 841 (Tex.App.-Waco 1994, orig. proceeding). We also observe that relator has made a prima facie showing that disclosure of the COC's membership pursuant to the trial court's order will burden her First Amendment rights and those of other members. *See Bay Area Citizens*, 982 S.W.2d at 376.[4] This prima facie showing ordinarily would shift the burden of proof to Sheriff Thomas and Deputy Burton to demonstrate that the information they seek is substantially related to a compelling state interest. *See id.* at 378. However, the respondent has not briefed the issue of whether a compelling state interest justifies the discovery sought in the underlying case. More importantly, save for one exception discussed below, we find that the discovery sought

4. In *Bay Area Citizens*, the Texas Supreme Court noted that the burden of showing harm to First Amendment associational rights must be light and that "the evidence offered need show only a reasonable probability that the compelled disclosure of [members'] names will subject them to threats, harassment, or reprisals from either government officials or private parties." *Bay Area Citizens*, 982 S.W.2d at 376 (quoting *Buckley v. Valeo*, 424 U.S. 1, 74, 96 S.Ct. 612, 661, 46 L.Ed.2d 659 (1976)). "The proof may include specific evidence of past or present harassment of members due to their associational ties or of harassment directed against the organization itself." *Id.* Although relator has not offered any specific evidence of harassment, *Bay Area Citizens* recognizes that potential infringement on an association's First Amendment rights may exist even in the absence of a factual record of harassment. *See id.* at 377.

The court cited cases holding that the mere potential for reprisals, even if only perceived by the party seeking protection, may be sufficient to show an infringement on First Amendment rights and that it is the task of the court to evaluate the likelihood of any chilling effect. *See id.* Because the ads taken out by the COC in the Katy Times brought public attention to alleged abuses by the HCSD, relator concludes that disclosure of the identity of the COC members will subject them to subpoena in the underlying lawsuit and to fear of potential retaliation by the very law enforcement agency they claim is abusive. *See Tilton*, 869 S.W.2d at 956 (ministry claimed that court order requiring it to produce list of contributors would infringe on contributors First Amendment rights by subjecting them to threat of subpoena for questioning).

by Sheriff Thomas and Deputy Burton does not violate relator's First Amendment rights.

In *Tilton*, the Texas Supreme Court recognized the importance of open discovery even in the face of a claim of First Amendment associational rights. *See* 869 S.W.2d at 957. While the court never stated that the interest in open discovery is a compelling one, it concluded that such an interest might justify disclosure of narrow limited groups of individuals based on a particularized showing of need. *See id.* Here, Sheriff Thomas and Deputy Burton do not seek the membership or contributor list of the COC nor are they otherwise attempting to discover the identity of members or contributors of that organization. Instead, they seek the identity of only a limited group of individuals: those individuals who were responsible for the ads that appeared in the Katy Times.[5] Without this information, Sheriff Thomas and Deputy Burton cannot prove who defamed them and cannot obtain full redress on their claims. The general purpose of discovery is to allow the parties to obtain full knowledge of the facts and issues prior to trial. *See id.* This purpose would be completely thwarted if we were to allow relator to shield her answers behind the First Amendment when the information now sought does not inquire about membership in the COC and thus, does not violate relator's right to freedom of association. Accordingly, in this proceeding, to the extent that Sheriff Thomas and Deputy Burton seek answers to specific deposition questions about the composition and placement of the ads rather than membership in the COC, we hold they are entitled to those answers. That includes answers on who wrote, or collaborated in writing, the ads, where the collaborators met, who supplied information for the ads, who paid for the ads, and who delivered the ads to the Katy Times.

Except for request number four of the subpoena *duces tecum*, we find that the requests seek information that relates to either the "Beaird incident," the subsequent investigation, or the placement of the ads and therefore, are not protected by the First Amendment.[6] Sheriff Thomas and Deputy Burton are not, however, entitled to any documents that relate to the COC or its members as sought in request number four because this request seeks membership information protected by the First Amendment and Sheriff Thomas and Deputy Burton have failed to show a compelling state interest justifying production

---

5. A review of relator's deposition confirms that while initial questions inquired about the the formation and membership of the COC, counsel for Sheriff Thomas and Deputy Burton, for the most part, abandoned that inquiry and focused solely on the ads.

6. The subpoena *duces tecum* requested:
1. Any and all documents, photographs, and audio or videotapes that show, depict, refer or pertain to Tommy Thomas and/or Deputy John Burton.
2. Any and all reports, writings, correspondence, and/or documents provided to or forwarded to any agency, entity or organization that in any way relate to or pertain to Tommy Thomas, Deputy John Burton or the arrest of Vonessa Beaird on March 17/18, 1999.
3. Any and all reports, writings, correspondence, and/or documents received from any agency, entity, or organization that in any way relate or pertain to Tommy Thomas, Deputy John Burton or the arrest of Vanessa Beaird on March 17/18, 1999.
4. Any and all documents that in any way relate to the [COC] and/or its members.
5. Any and all documents supplied to the governor's office or in any used to compile or create the documents supplied to the governor's office referred to in the advertisement in the Katy Times on July 25, 1999, by the [COC] as the *Special Report to the Governor's Office on Police Corruption*.
6. Any documents in any way relating to Department of Public Safety (DPS) review of the incident as alleged in the July 25, 1999, [COC] advertisement in the Katy Times.
7. Any documents that show which individuals supplied money for the placement of or which individuals paid for the placement of advertisements in the Katy Times by the [COC].

of these documents.[7] Accordingly, we conditionally grant the writ of mandamus to the extent the trial court's order requires relator to produce the documents in request number four.[8] In this regard, the writ will issue only if the trial court does not comply. To the extent the trial court's order requires relator to answer deposition questions concerning the identity of those individuals responsible for the ads, we hold that such information is not protected by the First Amendment and deny mandamus relief.

RICHARD H. EDELMAN, Justice, concurring and dissenting.

I concur with the majority opinion that disclosure of the identity of the individuals who were involved in placing the allegedly defamatory ad does not violate First Amendment rights. However, contrary to the majority opinion, I do not believe that relator made a prima facie showing that disclosure of COC membership information will burden First Amendment rights. In particular, as in *Buckley,*[1] and as distinguished from the facts of *Bay Area Citizens,*[2] relator has offered no factual, non-speculative evidence of a reasonable probability of reprisal (other than that those who were involved in placing the ad will be made parties to the lawsuit). Therefore, relator has not demonstrated an abuse of discretion by the trial court and is not entitled to mandamus relief.

Nevertheless, respondent's brief states clearly that disclosure of COC membership information, as such, is no longer sought by Thomas and Burton:

This case [*N.A.A.C.P. v. Alabama*] is not applicable to the case at bar where the identity of members will not be asked for.... Here, respondents merely want to know the identity of those persons who were involved in fabricating and publishing defamatory statements about them so they can be made parties prior to the running of the statute of limitations.... Here, Thomas and Burton need to know only the identity of those persons, be they members or not, who contributed to the defamatory publications.... The government is not attempting to compel the identity of members of an organization, individuals are trying to find out who defamed them.

[T]he identities of the members of the [COC] will not be sought.... This is all Thomas and Burton seek, the identity of the persons who participated in the conduct complained of. Whether or not they were members of the [COC] doesn't matter, and won't be inquired about.

Because these statements effectively abandon any request for membership information, as such, there is no longer any live controversy concerning disclosure of that information, and the issue concerning it is now moot. Thus, rather than include an advisory and, I believe, questionable, analysis of that issue, I would simply hold that no issue remains as to disclosure of the membership information and advise the trial court that the portion of the order compelling compliance with document re-

---

7. As we noted, the respondent does not brief this issue, but instead argues only that the First Amendment does not protect defamatory speech. Because the merits of the underlying defamation action are not before us in this mandamus proceeding, we need not address this issue. For the same reason, we need not address relator's contention that the Noerr–Pennington doctrine bars the underlying defamation action. *See generally RRR Farms, Ltd. v. American Horse Protection Ass'n, Inc.,* 957 S.W.2d 121, 126–29 (Tex.App.-Houston [14th Dist.] 1997, writ denied).

8. Contrary to the dissent's conclusion, Sheriff Thomas and Deputy Burton have not abandoned all of their discovery requests. Even if they had, there remains a valid court order requiring relator to comply with discovery, including request number four.

1. *See Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

2. *See In re Bay Area Citizens Against Lawsuit Abuse,* 982 S.W.2d 371, 376–78 (Tex.1998).

quest number four should be withdrawn accordingly.