**Dissent and Opinion Filed February 24, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-18-00611-CV**
_____

**PANDA POWER GENERATION INFRASTRUCTURE FUND, LLC, D/B/A/ PANDA POWER FUNDS; PANDA SHERMAN POWER HOLDINGS, LLC; PANDA SHERMAN POWER INTERMEDIATE HOLDINGS I, LLC; PANDA SHERMAN POWER INTERMEDIATE HOLDINGS II, LLC; PANDA SHERMAN POWER, LLC; PANDA TEMPLE POWER HOLDINGS, LLC; PANDA TEMPLE POWER INTERMEDIATE HOLDINGS I, LLC; PANDA TEMPLE POWER INTERMEDIATE HOLDINGS II, LLC; PANDA TEMPLE POWER, LLC; PANDA TEMPLE POWER II HOLDINGS, LLC; PANDA TEMPLE POWER II INTERMEDIATE HOLDINGS I, LLC; PANDA TEMPLE POWER II INTERMEDIATE HOLDINGS II, LLC; PANDA TEMPLE POWER II, LLC, Appellants**
**V.**
**ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC., Appellee**

**On Appeal from the 15th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. CV-16-0401**

# DISSENTING OPINION FROM GRANT OF *EN BANC* RECONSIDERATION

Before the Court sitting En Banc

Opinion by Justice Schenck

I do not believe the original panel decision in this dispute between appellants

(collectively referred to herein as "Panda") and the Electric Reliability Council of

Texas, Inc. ("ERCOT") is erroneous, much less "clearly" so, as to warrant reconsideration by the Court sitting en banc. Accordingly, I disagree with the majority's decision to the contrary and believe the construction of law it advocates poses, at a minimum, serious and unavoidable constitutional concerns in conferring law-making authority on a private entity. This concern, in my view, can and should be avoided by adhering to the original panel's construction of the law in this case. Accordingly, I respectfully dissent from this Court's decision to consider this case en banc and from the majority's deviation from the original panel decision.

**DISCUSSION**

## I. The Original Panel Opinion Is Not Clearly Erroneous, thus, the "Law of the Case" Doctrine Controls

Panda's appeal in this case implicates the law of the case doctrine because it seeks to revisit a decision of this Court granting a petition for writ of mandamus and directing the trial court to vacate its order denying ERCOT's plea to the jurisdiction based on sovereign immunity and dismiss the case for lack of jurisdiction. *See Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 552 S.W.3d 297, 301, 320 (Tex. App.—Dallas 2018), *pet. dism'd w.o.j*, 619 S.W.3d 628 (Tex. 2021). Under that doctrine, a court of appeals is ordinarily bound by its initial decision in any subsequent appeal in the same case, which is the case here. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). This doctrine follows from the sound policy that when an issue is litigated and decided, that should be the end of the matter. *United States v. U. S. Smelting Ref. & Mining Co.*, 339

–2–

U.S. 186, 198 (1950). A decision that is "clearly erroneous" and would work a manifest injustice is an exception to the law of the case doctrine. *Id.*

While there is little helpful development of the clearly erroneous standard in Texas law, I find the Seventh Circuit's decision in *Parts and Electric Motors, Inc. v. Sterling Electric, Inc.*, 866 F.2d 228, 233 (7th Cir. 1988), to be instructive on the application of same. In that case, the court noted that "under the clearly erroneous standard, we cannot meddle with a prior decision of this or a lower court simply because we have doubts about its wisdom or think we would have reached a different result." *Id.* "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong, it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Id.* To be clearly erroneous, then, the original panel decision must be "dead wrong." *Id.*

Because I do not see *any* error in the original panel opinion, let alone "clear" error, I would conclude this case does not present the exceptional circumstances that justify departure from the law of the case doctrine. For this reason alone, I disagree with the majority's view and decision.

## II. The Majority's Conclusion ERCOT Is Not Entitled to Immunity Raises Constitutional Concerns Regarding the Delegation of Legislative Power

Moreover, and in addition, I have grave concerns with the majority's conclusion that ERCOT, a private entity acting at the behest of a state agency, is not

entitled to immunity because, by necessity, it triggers the issue of a possible unconstitutional delegation of rule-making authority.

The Texas Constitution vests all "legislative power in the Legislature." *See* TEX. CONST. art. III, § 1 (creating the legislative department); *see also* TEX. CONST. art. II, § 1 (establishing separation of powers among the legislative, executive, and judicial departments). The Texas Supreme Court has long recognized that "because a legislative body would be hard pressed to contend with every detail involved in carrying out applicable laws, delegation of some legislative power is both necessary and proper." *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 654 (Tex. 2004). "Thus, the Legislature may delegate legislative power to local governments, administrative agencies, and even private entities under certain conditions." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000). Any such delegation "must be exercised with a certain amount of caution." *Patient Advocates*, 136 S.W.3d at 654. Where the Legislature purports to delegate its law-making authority to a private entity, the delegation will be "subject to more stringent requirements and less judicial deference" than a public delegation, given that it raises "more troubling constitutional issues." *FM Props.*, 22 S.W.3d at 874 (explaining the difficulties that arise when private delegates "are not elected by the people, appointed by a public official or entity, or employed by the government").

In 1999, the Texas Legislature enacted Chapter 39 of the Texas Public Utility Regulatory Act ("PURA") to restructure the electric utility industry in Texas. TEX.

UTIL. CODE §§ 39.001–.916. Under PURA, the Public Utility Commission ("PUC") was required to certify an independent system operator ("ISO") to, among other things, "ensure the reliability and adequacy of the regional electrical network." *Id.* § 39.151(a)–(c). In 2001, the PUC certified ERCOT as the ISO. While ERCOT was not created by the Legislature, its certification arose out of—and operates within— a legislative delegation of authority to the PUC. *Id.* § 39.151(c). Under the authority of PURA section 39.151(d), the PUC chose to delegate its rule-making and enforcement authority to ERCOT. *Id.* § 39.151(d). Thus, ERCOT makes binding rules that have the positive force of a statute. Concluding that ERCOT's function in this capacity is a private one raises serious constitutional questions.

When there has been a private delegation of legislative authority, that delegation must withstand constitutional muster. Eight factors are generally considered in making the determination. *See Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 472 (Tex. 1997).[1] And in deciding whether to

---

[1] Those factors include:

   1. Are the private delegate's actions subject to meaningful review by a state agency or other branch of state government?

   2. Are the persons affected by the private delegate's actions adequately represented in the decision-making process?

   3. Is the private delegate's power limited to making rules, or does the delegate also apply the law to particular individuals?

   4. Does the private delegate have a pecuniary or other personal interest that may conflict with its public function?

delegate rule-making or enforcement authority to another, governmental agencies often seek the Attorney General's guidance on the constitutionality of same. *See, e.g.*, TEX. ATTY. GEN. OP. No. KP-0133 (2017) (addressing whether proposed Upper San Saba River Management Plan unlawfully delegates legislative power to private entity and concluding, notwithstanding the preliminary status of the submitted plan, some of the *Boll Weevil* factors weigh in favor of finding the plan is constitutional, and some against); TEX. ATTY. GEN. OP. No. JC-0510 (2002) (addressing whether Texas Department of Licensing and Regulation's executive director may adopt, as standards for installing, altering, operating, and inspecting elevators, escalators and related equipment, safety codes adopted by American Society of Mechanical Engineers, and concluding the director is prohibited from adopting standards that differ from those that existed when safety codes were included in Health and Safety Code section 754.014); TEX. ATTY. GEN. OP. No. JC-0012 (1999) (addressing whether, pursuant to section 5B(a) of Texas Plumbing License Law, State Board of

---

5. Is the private delegate empowered to define criminal acts or impose criminal sanctions?

6. Is the delegation narrow in duration, extent, and subject matter?

7. Does the private delegate possess special qualifications or training for the task delegated to it?

8. Has the Legislature provided sufficient standards to guide the private delegate in its work?

*Id.*

Plumbing Examiners is authorized to adopt plumbing codes other than those that existed at the time section 5B was adopted and concluding it is not).

As its name implies, the canon of constitutional avoidance thus further directs us to prefer any reasonable construction of this statute that would avoid the potential of our having to plow through the eight-factor field of constitutional inquiry that might otherwise apply to this or future stages of this case. *In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex. 1998) (orig. proceeding). The original panel's construction of the law wisely avoided the potential for a constitutional infirmity in delegation of authority; the en banc majority's construction does not. For that reason, as well, I would adhere to the original panel decision.

### III. Even Assuming ERCOT Lacks Immunity, the PUC Has Exclusive Jurisdiction

Finally, I disagree with the majority's view concerning the PUC's jurisdiction over the claims asserted in this case. Texas trial courts have general jurisdiction except in those situations in which the Constitution or some other law confers exclusive, appellate, or original jurisdiction on some other court, tribunal, or administrative body. *See* TEX. CONST. art. V, § 8.

Recently our colleagues in San Antonio addressed the issue of whether the legislature has granted the PUC exclusive jurisdiction to address asserted common-law claims against ERCOT and concluded it has done so through PURA's pervasive regulatory scheme. *See Elec. Reliability Council of Tex., Inc. v. CPS Energy*, No.

04-21-00242-CV, 2021 WL 5879183, at *10, 13 (Tex. App.—San Antonio Dec. 13, 2021, pet. filed). I agree with our colleagues' analysis and would apply it to this case even if I agreed with the majority that ERCOT lacks immunity.

In addition, I note that, in the current case, the PUC weighed in on the agency's position with respect to its jurisdiction. The PUC asserts that it has exclusive original jurisdiction over Panda's complaints about ERCOT because its oversight of ERCOT's performance includes the PUC mandated "Report on Capacity, Demand, and Reserves" and ERCOT's forecasts. While the agency's litigating position is not controlling, I would still give it due regard with respect to the jurisdictional issue presented in this case. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006) (no deference to opinions in agency's amicus brief). Because I find it persuasive, I would follow it and conclude that the PUC is assigned exclusive jurisdiction to entertain and remediate this dispute as it deems appropriate.

Following the analysis by our sister court of appeals, as well as giving due regard to the PUC's position in this case and finding it to be well taken, I would conclude the trial court properly dismissed Panda's claims against ERCOT because the PUC has exclusive original jurisdiction over Panda's complaints.

## CONCLUSION

Because I would conclude that the original panel opinion was not clearly erroneous, the majority's decision undermines the constitutional-avoidance doctrine, and the PUC has exclusive jurisdiction over Panda's complaints, I dissent.

180611f.p05

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE