

# NUMBER 13-12-00099-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

KNAPP MEDICAL CENTER, INC.,                                    Appellant,

v.

JEFFREY C. GRASS,                                              Appellee.

### On appeal from the 430th District Court
### of Hidalgo County, Texas.

# O P I N I O N

**Before Chief Justice Valdez and Justices Benavides and Perkes**
**Opinion by Justice Benavides**

Appellant, Knapp Medical Center (KMC), appeals the trial court's denial of its motion for summary judgment in favor of appellee Jeffrey Grass's cross-motion for summary judgment.   By four issues, KMC asserts that that trial court erred by:

(1)     ruling as a matter of law that it was not exempt from the disclosure requirements for non-profit corporations under the Business Organizations Code;

(2)     overruling its objections to an affidavit made by Grass's expert;

(3)     ordering an overbroad production of financial documents; and

(4)     ordering KMC to post a supersedeas bond without any evidence of damage or loss to Grass on appeal.

We reverse and render.

## I.      BACKGROUND

On February 7, 2011, Grass, a licensed Texas attorney from Plano, sent a letter to KMC's chief financial officer, Curtis Haley, and requested numerous documents pursuant to section 22.353 of the Texas Business Organizations Code.   *See* TEX. BUS. ORGS. CODE ANN. § 22.353 (West 2011).   Grass's request included:

(1)     A copy of KMC's by-laws;

(2)     Minutes of the Board of Directors meetings for each meeting since 2006;

(3)     Audited financials and related reports under Circular A-133 for each tax year since 2006;

(4)     Management Representation letters from client to auditors showing contingencies and off balance sheet liabilities;

(5)     All Internal Control reports issued by accountants or auditors for each year since 2006;

(6)     All federal tax returns (Forms 990 and IRS correspondence) for each tax year since 2006;

(7)     Copies of Forms W2 and W3 for each tax year since 2006;

(8)     Copies of Forms 1096 and 1099s for each tax year since 2006;

2

(9)    Related Party Transaction Reports required of 501(c)(3) companies since 2006;

(10)    Travel Expense Reports required of 501(c)(3) companies since 2006;

(11)    Personal Activity Reports required of 501(c)(3) companies since 2006;

(12)    Due diligence reports as a result of [KMC's] proposed merger with Valley Baptist Hospital;

(13)    Form 1023 (Original application for tax exempt status to the Internal Revenue Service);

(14)    List of contractors since 2006;

(15)    Comparative studies performed and any and all documents considered by the Compensation Committee in setting the compensation of the Chief Executive Officer and all subsequent bonuses since 2006;

(16)    Any and all documents related to insurance policies obtained and maintained by KMC for each year since 2006; and

(17)    The identities of any entities or sub-entities formed for the purpose of merging or acquiring other healthcare facilities or for the recruitment of primary care physicians.

KMC resisted Grass's request and cited its exemption from such disclosure under section 22.355(2) of the business organizations code. *See id.* § 22.355(2). KMC then filed a petition for declaratory judgment that requested the trial court to declare KMC exempt from any requirement to produce the documents under section 22.355(2). *See id.* Grass answered the petition and asserted an affirmative defense of estoppel based on the state's public policy that favors public disclosure of financial documents of non-profit corporations.

**A.    Grass's Motion for Summary Judgment**

Grass also filed a motion for summary judgment. The motion contends, among

3

other things, that KMC was not entitled to the statutory exemption of non-disclosure as a matter of law because KMC set up a sham non-profit corporation known as Knapp Medical Center Foundation ("the Foundation") to circumvent the section 22.353 disclosure requirements. Grass asserts that because KMC receives funds from the Foundation, which solicits funds in excess of $10,000 from the public, KMC is subject to the disclosure requirements of section 22.353(b). Grass contends that the Foundation was a "shell corporation" designed to funnel money to KMC, and this formation should not extend the statutory exemption of non-disclosure to KMC.

Grass attached an affidavit from former paid KMC consultant Patricia C. Fogarty to his motion. In it, Fogarty asserts that to her "recollection," "Knapp Medical Center Foundation both solicited and received more than $10,000 yearly from sources other than its own trustees," and that it was her "professional opinion that [the Foundation] has existed only to support the work of [KMC]" and that to her "knowledge[,] it does not function for any other purpose."

The Texas Medical Association (TMA), with leave granted by the trial court, filed a brief *amicus curiae* in support of Grass's motion for summary judgment.[1] TMA's brief essentially reiterates the arguments contained in Grass's motion and also attaches other supporting evidence, including:

> (1) The Foundation's Articles of Incorporation, which states that the Foundation is "organized for the sole benefit of, and the specific purpose of

---

[1] The Texas Medical Association (TMA) contends in its brief that it has an interest in this case through its TMA members on staff at Knapp Medical Center. The TMA also indicated that appellee, Jeffrey Grass, represents members of TMA "who are advocating on behalf of their patients and the community of Weslaco."

supporting . . . of [KMC] in Weslaco . . . so long as [KMC] shall qualify as an exempt organization" under the federal Internal Revenue Code; and

(2)     Filings with the Texas Secretary of State that show KMC's chief executive officer, James A. Summersett III, served as the registered agent for both KMC and the Foundation.

## B.     KMC's Motion for Summary Judgment

By its own motion for summary judgment, KMC contends that it is entitled to protection from disclosure of financial documents as a matter of law under the exemption articulated in section 22.355(2) because KMC and the Foundation are entirely separate non-profit corporations.   KMC also contends that TMA's claim that the Foundation is a "sham corporation" is "without evidence or citation to legal authorities."   Further, KMC asserts that Grass's argument is unsupported under the relevant statute or stated public policy.

KMC attached the following evidence to support its motion:

(1)     An affidavit from KMC CEO James Summersett, who contends, among other things, that KMC: (a) is a not-for-profit corporation organized under the laws of Texas; (b)   does not "intend to solicit and receive contributions from the public in an amount exceeding $10,000"; and (c) receives grants from the Foundation for the purchase of specific items of equipment, as directed by the Foundation's board of directors and are not made to support KMC's general operating expenses. Summersett also states that KMC and the Foundation are separate corporations and that the Foundation solicits, receives, and accepts gifts.

(2)     A February 20, 2011 letter to KMC from Grass, in which Grass broadens his initial request for disclosure from his original to include "comparative pay studies" and "all contracts, agreements, resolutions, minutes of meetings, notes and informal memoranda pertaining to any aspect of the total compensation and benefit package(s) of the CEO. . . ."

KMC also filed a response to Grass's motion for summary judgment.   The

5

response adopts all of its arguments from its own motion and includes the same exhibits. In its response, KMC also objected to Grass's use of Fogarty's affidavit because her statements were "improperly qualified," under rule 166a. *See* TEX. R. CIV. P. 166a.[2]

## C.    The Trial Court's Orders

On August 17, 2011, the trial court held a hearing on each party's respective motion. After taking the matter under advisement, the trial court eventually issued a ruling on October 11, 2011, which granted Grass's motion for summary judgment and denied KMC's. The trial court found that Grass was entitled to summary judgment as a matter of law because KMC was not exempt under the relevant statutes. On the parties' agreement, the Court also ordered an evidentiary hearing as to what documents were subject to public disclosure.

On October 27, 2011, Grass filed a "Revised Document Request" which requested six categories of documents:

(1)    KMC's financial statements, including balance sheets, statement of cash flows, income statements, and pre-adjusted trial balances;

(2)    Management letters from the external auditor;

(3)    IRS Forms 990 for all related entities;

(4)    Compensation documentation for all employees, including W-2s, 1099, and payroll reports;

---

[2] Grass filed a response KMC's motion for summary judgment in which he incorporated the same arguments and evidence from his own motion for summary judgment. In his response, however, Grass attached a second affidavit signed by Patricia Fogarty which changed the contested portions of her previous affidavit from "recollections" and "opinions" to positive and direct statements—e.g. "I was aware that [the Foundation] both solicited and received more than $10,000 yearly from sources other than its own trustees."

(5)     Documents about deferred executive compensation, including written plans, contracts with agencies, minutes of the Board of Directors authorizing the arrangement, and any contracts relating to future obligations; and

(6)     Any other documentation expressly referred to in Section 22.352(a) as it relates to the financial statement information provided within Subsection (b) and the underlying footnotes to the financial information.

Grass's amended request was supported by an affidavit signed by accountant Steven C. Thompson, Ph.D.   In the affidavit, Thompson states that he has personal knowledge of the facts involved in the case, is familiar with Generally Accepted Accounting Principles (GAAP) and Accounting Standards Codification (ASC) standards of accounting, and that all six categories of documents requested "fall within the definition of records, books, and annual reports as expressed by [Texas Business Organizations Code] sections 22.352 and 22.353."

Without waiving its previous exemption argument, KMC filed a response to Grass's request and objected to Thompson's affidavit on the ground that it "tries to invade the province of the Court by interpreting the meaning of the statute."   KMC also responded to Thompson's affidavit by an affidavit from its own expert, Rodney Lenfant.

On December 14, 2011, the trial court held a hearing without oral testimony as to what documents KMC was required to disclose.   After the hearing, the trial court deferred its ruling.   In the interim, Grass filed a supplemental brief which argued that KMC should be allowed to withhold documents pending an appeal if KMC posted a $50,000 supersedeas bond.   *See* TEX. R. APP. P. 24.2(A)(3).   KMC responded by letter

brief, which argued against posting a supersedeas bond because Grass would suffer "no loss or damage while this case is on appeal."

Two days later, the trial court ruled, in relevant part, that:

(1) KMC's objections to Thompson's affidavit, which gave his opinion about what documents fall within the meaning of the public disclosure statute under generally accepted accounting principles be overruled;

(2) Grass's Revised Document Request be granted, in part, and denied, in part;

(3) KMC produce the following documents for calendar years 2008, 2009, 2010:

    a. Internal Revenue Service Forms 990 for 2008 and 2009;

    b. Internal Revenue Service Forms 990 for 2010 after it is prepared and filed;

    c. Documents that trace how grants from the Foundation were used for 2008–2010, including documentation that reflects the sale or disposition of any items purchased by KMC with grants from the Foundation during 2008–2010.

    d. KMC financial statements, including all balance sheets, statement of cash flows, income statements, and pre-adjusted trial balances;

    e. Management letters from the external auditor;

    f. Compensation Documentations, with redacted personal information, such as social security numbers; and

    g. Deferred executive compensation, including written plans, contracts with agencies, board of directors minutes authorizing such arrangement, and any contracts relating to future obligations;

(4) That KMC post a $25,000.00 supersedeas bond pending appeal; and

(5) That the present orders disposed of all remaining issues of the case and rendered the case final and appealable.

This appeal ensued.[3]

## II.     SUMMARY JUDGMENT

By its first issue, KMC asserts that the trial court erred when it ruled that KMC was not exempt from the disclosure requirements of sections 22.353 and 22.355 of the Business Organizations Code as a matter of law.

### A.     Standard of Review

We review a trial court's grant of summary judgment de novo.   *Mid-Century Ins. Co. of Tex. V. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2008).   When, as here, both parties moved for summary judgment and the trial court granted one and denied the other, we determine all questions presented and render the judgment the trial court should have rendered.   *Id.* (citing *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex. 2002); *see FM Props. Op. Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).   On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law.   *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

Here, both parties rely on statutory provisions to support their respective motions. In general, matters of statutory construction are questions of law.   *Argonaut*, 87 S.W.3d

---

[3] We note that various *amicus curiae* briefs were filed in this case.   *See* TEX. R. APP. P. 11.   The Texas Medical Association, American Medical Association, Texas State Representative Armando Martinez, and the Objective Watchers of the Legal System (O.W.L.S.) filed a joint amici brief in support of appellee Grass.   Additionally, (1) the Texas Hospital Association, Texas Association of Voluntary Hospitals, Texas Organization of Rural & Community Hospitals; (2) Community Hospital Corporation and Memorial Health System of East Texas; and (3) Christus Health, Memorial Hermann Healthcare System, the Methodist Hospital System, Texas Children's Hospital, and Texas Health Resources all filed their respective amici briefs in support of appellant KMC.

9

at 529; *City of Garland*, 22 S.W.3d at 356.   Our objective in construing a statute is to give effect to the Legislature's intent and shall consider at all times, the old law, the evil, and the remedy.   TEX. GOV'T CODE ANN. § 312.005 (West 2005); *see Mid-Century*, 243 S.W.3d at 621.   Our interpretation of these statutes begins with their plain meaning, which we derive from the entire act and not just from isolated portions.   *Id.* (internal citations omitted).   Therefore, we read the statute as a whole and interpret it to give effect to every part.

## B.   Statutory Construction and Interpretation

Both parties agree that the relevant statutory provisions involved in this case arise out of Chapter 22 of the Texas Business Organizations Code concerning the regulation of non-profit corporations—specifically, Subchapter H, regarding the public disclosure of financial records and annual reports of these corporations.   *See* TEX. BUS. ORGS. CODE ANN. §§ 22.351–.356.

First, we read and construe section 22.353 as a statutory mandate to all domestic non-profit corporations[4] to keep records, books, and annual reports of the non-profit corporation's financial activity on file at the non-profit corporation registered or principal office in Texas for at least three years after the close of the non-profit corporation's fiscal year.   *Id.* § 22.353.   Further, section 22.353 requires all domestic non-profit corporations to make said records, books, and annual reports, which are held for at least

---

[4] A non-profit corporation under this chapter is "a corporation, [in which] no part of the income of which is distributable to a member, director, or officer of the corporation" formed for any lawful purpose not expressly prohibited, including any purpose described in section 2.002 of the business organizations code. *See* TEX. BUS. ORGS. CODE ANN. §§   22.001; 22.051 (West 2011); *see also id.* § 2.002 (West 2011).

three years after the close of each fiscal year, available to the public for inspection and copying at the corporation's registered or principal office. The statute also allows the corporation to charge reasonable fees for preparing copies of a record or report. *Id.*

Section 22.353 is essentially a re-codification of the now defunct Texas Civil Statutes article 1396-2.23A § C into the Texas Business Organizations Code. *See* Acts 2003, 78th Leg., R.S., ch. 182 § 1, 2003 Tex. Sess. Law. Serv. Ch. 182 (H.B. 1156) (West). The legislative intent behind the original provision of the Texas Non-Profit Corporation Act was to open the windows of transparency to non-profit organizations who solicited money from the public by keeping financial records on file and opening those records for public inspection, if so requested. According to the original bill analysis, then-Senator Gene Jones of Harris County authored the legislation as a response to his previously failed attempt to conduct a study of a non-profit drug rehabilitation program in Houston that was rumored to have used funds for investments in night clubs. *See* Senate Comm. on Bus. & Indus., Bill Analysis, Tex. S.B. 857, 65th Leg., R.S. (1977).

We recognize section 22.355, however, as a list of available statutory exemptions for non-profit corporations to the record-keeping and public-disclosure requirements of section 22.353. Because KMC only argues for protection under the statute's second listed exemption, we will only construe that one. *See* TEX. BUS. ORGS. CODE ANN. § 22.355(2). Under this exemption, non-profit corporations are not subject to section 22.353 if they do not intend to solicit and receive and do not actually raise or receive during a fiscal year contributions in an amount exceeding $10,000 from a source other

11

than its own membership. *Id.* Like section 22.353, section 22.355 originally appeared in article 1396.2.23A § E of the Texas Civil Statutes.

Since its re-codification in 2003, our research—including the research of the parties to this appeal—reveals no case law which specifically addresses, interprets, or analyzes the current applicable statute. The Austin Court of Appeals, however, construed and analyzed the relevant exemption under its predecessor statute in a case involving similar facts to the one before us today. *See Tex. Appellate Practice & Educ. Res. Ctr. v. Patterson*, 902 S.W.2d 686, 688 (Tex. App.—Austin, 1995, writ denied).

In *Patterson*, state senator Jerry Patterson requested disclosures of the financial records and reports, pursuant to section 22.353's predecessor, article 1396-2.23A § C, from a non-profit corporation ("the Resource Center"), whose stated purpose was to ensure that death row inmates in Texas had adequate legal counsel. *See id.* at 687. The Resource Center denied Patterson's request, and Patterson responded by filing a petition for writ of mandamus in Travis County district court. After a hearing, the district court determined that the disclosure statute applied to the Resource Center and ordered it to turn over all records, books, and financial reports of its financial activities.

The Resource Center argued on appeal that it was exempt from the disclosure requirements as a matter of law under article 1396–2.23A(E)(2) (present-day section 22.355(2)). The Austin court agreed. While the Resource Center admitted to receiving revenue totaling $3.9 million during the 1993 fiscal year, it argued that the revenues received were not raised or received through "contributions," as articulated in the statute, because "contributions" did not include "grants received . . . [from] state and

12

private foundations." *Id.* at 688. In its opinion, the Austin court cited the original bill analysis and bill hearings, which revealed a "narrowly drawn law" that focused on non-profit corporations which solicited "*funds from the public.*" *Id.* at 688–89 (emphasis in original). The court further held that "when a non[-]profit corporation receives grant funding . . . the statute is unnecessary because the terms of the grant and the grantor's oversight provide the means of holding the corporation accountable for the use of grant funds." *Id.*

Because we conclude that the purpose and language of the current section 22.353 exemption is unchanged from its article 1396–2.23A(E)(2) predecessor, we will extend the *Patterson* holding to this case and apply the principles herein.

## C. Discussion

Thus, the principal issue in this case is whether, as KMC argues, a non-profit corporation hospital, which makes grant requests and receives grants for specific items to and from a non-profit corporation foundation, whose sole purpose of formation is to provide financial support for said non-profit corporation hospital, is exempt as a matter of law from the public-disclosure requirement articulated the business organizations code. *See id.* §§ 22.353; 22.355. KMC asserts that the evidence establishes, as a matter of law, that it falls under the section 22.355 (2) exemption from public disclosure of financial records and reports. We agree.

Grass argues that KMC should not be shielded from the statutory public-disclosure mandates for non-profit corporations because KMC and the Foundation are in essence one in the same because the Foundation is a "straw-man"

and "shell corporation" designed solely to funnel money to KMC. The record shows that KMC and the Foundation are separate domestic non-profit corporations. The Foundation was incorporated for "the sole benefit of, and the specific purpose of supporting . . . [KMC]." Furthermore, the record shows that the Foundation "solicits, receives, and accepts gifts" from the public. However, this evidence alone does not support or establish any theory of liability to pierce the corporate veil. *See SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2009) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 271–72 (Tex. 1986)). Accordingly, we conclude that based on the record, KMC and the Foundation are separate and distinct domestic non-profit corporations.

Next, KMC chief executive officer Summersett's affidavit shows that KMC does not intend to solicit and receive contributions from the public in an amount exceeding $10,000. Summersett's affidavit also indicates that KMC receives grants from the Foundation to purchase specific equipment and not for general operating expenses. The rule in *Patterson* holds that when a non-profit corporation receives grant funding, section 22.353 (formerly art. 1396-2.23A § C) is not applicable because "the terms of the grantor's oversight provide the means of holding the corporation accountable for the use of grant funds." *Patterson*, 902 S.W.2d at 689. Therefore, we conclude that KMC's grants from the Foundation are not "contributions" as interpreted in section 22.355(2), and, as a result, the section 22.355(2) exemption applies to KMC as a matter of law. *See id.* at 688.

14

KMC's first issue is sustained.[5]

## III.    CONCLUSION

We reverse the trial court's judgment that grants Grass's motion for summary judgment and orders KMC to disclose documents under section 22.353. We render KMC exempt from the statutorily-mandated disclosures of section 22.353.

_____
GINA M. BENAVIDES,
Justice

Dissenting Opinion by
Chief Justice Rogelio Valdez.

Delivered and filed the
6th day of June, 2013.

---

[5] Because our ruling on KMC's first issue is dispositive, we need not address KMC's remaining issues.    _See_ TEX. R. APP. P. 47.1.