## TEXAS APPELLATE PRACTICE AND EDUCATIONAL RESOURCE CENTER, Appellant,

### v.

### Jerry PATTERSON, Appellee.

No. 03–94–00433–CV.

Court of Appeals of Texas, Austin.

June 21, 1995.

Rehearing Overruled Aug. 16, 1995.

Philip Durst, Wiseman, Durst & Tuddenham, Austin, Larry Zinn, San Antonio, for appellant.

Hector DeLeon, DeLeon & Boggins, Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

CARROLL, Chief Justice.

This is an appeal from an order granting a writ of mandamus. The writ was an order to appellant, the Texas Appellate Practice and Educational Resource Center (the "Resource Center"), to make available to appellee Jerry Patterson all of its records, books, and annual reports of financial activity for inspection

and copying in accordance with Article 1396–2.23A of the Texas Non–Profit Corporation Act. Tex.Rev.Civ.Stat.Ann. art. 1396–2.23A (West 1980 & Supp.1995). Upon motion of the Resource Center, the trial court suspended its order during the pendency of this appeal. We will reverse the judgment of the trial court.

## BACKGROUND

The Resource Center, a nonprofit corporation organized and existing under the laws of the State of Texas, is a community defender organization dedicated to ensuring that death row inmates in Texas have adequate legal counsel. In order to accomplish this objective, the Resource Center recruits lawyers to represent inmates, assists those lawyers in their representation, and takes on the representation itself in habeas corpus proceedings.

Patterson, a state senator, became concerned about the activities of the Resource Center in its representation of death row inmates and its public relations campaigns against the death penalty in Texas. Because of his concerns, Patterson made a number of requests for access to the Resource Center's financial records pursuant to the provisions of Article 1396–2.23A of the Texas Non–Profit Corporation Act. The Resource Center denied his requests, and Patterson responded by filing a petition for writ of mandamus in Travis County district court.

The court held a hearing on Patterson's petition on February 24, 1994. The court determined that Article 1396–2.23A applied to the Resource Center and granted the writ of mandamus in June 1994. The court ordered the Resource Center to make available to Patterson all records, books, and financial reports of its financial activities at its registered or principal office for inspection and copying during normal business hours. On motion of the Resource Center, the trial court suspended its order granting the writ of mandamus pending this appeal. In seven points of error, the Resource Center raises two basic questions: (1) as a matter of state statutory law, must the Resource Center comply with Article 1396–2.23A; and (2) as a matter of federal constitutional law, can Article 1396–2.23A apply to the Resource Center?

## DISCUSSION

In its first three points of error, the Resource Center raises the issue of whether Article 1396–2.23A applies to the Resource Center as a matter of state law. Section C of the statute provides:

All records, books, and annual reports of the financial activity of the corporation shall be kept at the registered office or principal office of the corporation in this state for at least three years after the closing of each fiscal year and shall be available to the public for inspection and copying there during normal business hours.

Tex.Rev.Civ.Stat.Ann. art. 1396–2.23A(C) (West 1980). However, certain nonprofit corporations need not comply with Article 1396–2.23A. Only one exemption is relevant to the instant appeal: "a corporation which does not intend to solicit and receive and does not actually raise or receive contributions from sources other than its own membership in excess of $10,000 during a fiscal year." Tex.Rev.Civ.Stat.Ann. art. 1396–2.23A(E)(2) (West 1980) (the "(E)(2) exemption").

We assume without deciding the issue that the Resource Center is subject to the provisions of the Texas Non–Profit Corporation Act.[1] We must thus determine whether the Resource Center falls within the (E)(2) exemption. For the 1993 fiscal year, the Resource Center received revenue totalling $3,968,500:

| | |
|---|---|
| Federal Grant | $ 3,200,000 |
| IOLTA | $ 75,000 |
| Contract with St. Mary's Law School | $ 25,000 |
| Private Donations | $ 8,290 |
| SUBTOTAL | $ 3,308,290 |
| Law School/Law Student Services | $ 660,210 |
| TOTAL | $ 3,968,500 |

1. The Resource Center contends that Article 1396–2.23A cannot apply to the Resource Center as a matter of federal constitutional law. However, we need not reach this issue because of our disposition of the state law issue.

Patterson argues that because the Center has no members, any funds it receives necessarily come from "sources other than its own membership" and that the almost four million dollars in funding received by the Resource Center is far in excess of the $10,000 threshold. Therefore, he contends that the Resource Center does not fall within the exemption. The Resource Center asserts that it falls within the (E)(2) exemption because it does not raise or receive "contributions" in excess of $10,000 and thus need not comply with Article 1396–2.23A. According to the Resource Center, the term "contributions" is not intended to include grants received through federal appropriations or from state and private foundations or to cover the donation of in-kind services, and since the Resource Center received less than $9000 in private donations, the (E)(2) exemption applies. We agree.

■ Our determination that the Resource Center falls within the (E)(2) exemption turns upon the meaning of "contributions."

> The resolution of an issue of statutory construction must begin with an analysis of the statute. If the disputed statute is clear and unambiguous extrinsic aids and rules of statutory construction are inappropriate, and the statute should be given its common everyday meaning.

*Cail v. Service Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983). Article 1396–2.23A does not define the meaning of contributions, and we have determined that the meaning of the term as used in exemption (E)(2) is ambiguous. Therefore, we must resort to rules of statutory construction. "The fundamental rule governing the construction of a statute is to ascertain the intent of the legislature in enacting the statute." *Brown v. Owens,* 674 S.W.2d 748, 750 (Tex.1984). This legislative intent is determined "from the language used and the purpose in enacting the law." *Wilburn v. State,* 824 S.W.2d 755, 760 (Tex. App.—Austin 1992, no writ). In construing a statute, a court may look to several factors, including the object sought to be attained (the purpose), the circumstances under which the statute was enacted, the legislative history, and the consequences of a particular con-

struction. *See* Tex.Gov't Code Ann. § 311.023 (West 1988).

■ The Resource Center urges this Court to construe "contributions" narrowly to mean funds solicited from the public, not grant funding or donation of in-kind services. The purpose of the statute and the circumstances under which it was enacted support this interpretation. The background section of the bill analysis for Article 1396–2.23A describes the circumstances under which it was enacted:

> During the last interim, the author attempted to conduct a study of a non-profit drug rehabilitation program in Houston. This program had been soliciting funds from the public and portrayed itself as a charitable endeavor. However, there were rumors that its funds were being used for investments in such businesses as nightclubs. During the six month investigation, the author of this bill was unable to determine how the program's funds were being used because the records were inadequate. *A major recommendation from the study was that Texas law should be amended to require non-profit organizations soliciting funds from the public to keep adequate records showing how the funds were actually being used.*

Senate Comm. on Bus. and Indus., Bill Analysis, Tex.S.B. 857, 65th Leg., R.S. (1977) (emphasis added). The bill analysis also reveals the purpose of the bill: "S.B. 857 amends current law to require non-profit corporations *soliciting funds from the public* to keep certain financial records." *Id.* (emphasis added).

In addition, the legislative history of Article 1396–2.23A sustains the Resource Center's narrow interpretation of the scope of the statute. Several times during the Senate hearings on S.B. 857, the bill's author, Senator Gene Jones, emphasized that the bill was a narrowly drawn law that was only meant to apply to certain non-profit corporations:

> [The bill] would simply give the right of people who are considering making a contribution, the right to know that there are records kept consistent with proper accounting principals in the office of the or-

ganization soliciting those funds during business hours.

\* \* \* \* \* \*

We didn't try to put anybody in this bill that we haven't had reports over having problems about. It has been a narrowly drawn bill to direct itself to those organizations that have given rise to some problem....

\* \* \* \* \* \*

[E]ven as narrowly drawn as this bill is, we didn't intend to reach anyone over whom we have no complaints. I think we have done that in this bill....

Hearing on Tex.S.B. 857 Before the Senate Economic Dev. Comm., 65th Leg., R.S. 4–5 (Apr. 6, 1977).

The purpose, legislative history, and circumstances under which S.B. 857 was enacted reveal that the statute was narrowly drawn to remedy a specific problem: lack of accountability. The legislature designed Article 1396–2.23A as a mechanism for making nonprofit corporations accountable for donations solicited from the public. In the absence of a problem, there is no need for a remedy. Thus, organizations for whom lack of accountability is not an issue do not fall within the scope of Article 1396–2.23A. When a nonprofit corporation receives grant funding, i.e., from the federal government or from the IOLTA ("Interest on Lawyers' Trust Accounts") fund of the Texas Bar Association, the statute is unnecessary because the terms of the grant and the grantor's oversight provide the means of holding the corporation accountable for the use of grant funds. Likewise, Article 1396–2.23A oversight of the donation of in-kind services is unwarranted. The lawyers, law students, and support staff at the capital punishment clinics at The University of Texas School of Law and St. Mary's Law School who donate their time and services know how their services are being used.

We accordingly hold that the term "contributions" means funds solicited from the general public and does not cover grant funding or donations of in-kind services. Because the Resource Center falls within the (E)(2)

exemption, we sustain the Resource Center's first three points of error.

### CONCLUSION

Since we have determined that the Resource Center is exempt from compliance with Article 1396–2.23A as a matter of state law, it is unnecessary to address the Resource Center's remaining points of error. We reverse the trial court's judgment and render judgment that the writ of mandamus be denied.