

# NUMBER 13-12-00099-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

KNAPP MEDICAL CENTER, INC.,                                    Appellant,

v.

JEFFREY C. GRASS,                                                    Appellee.

## On appeal from the 430th District Court
## of Hidalgo County, Texas.

## DISSENTING OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes**
**Dissenting Opinion by Chief Justice Valdez**

The question before this Court is whether Knapp Medical Center ("Knapp") is entitled to a declaration that it is exempt from the open records requirements pursuant section 22.355(2) of the Texas Business Organizations Code because it does not directly receive donations from the public in excess of $10,000. Because I disagree with the majority's conclusion that Knapp established as a matter of law that it is exempt

pursuant to section 22.355(2), I respectfully dissent. I would conclude that Knapp is not entitled to a declaratory judgment in this case, and I would affirm the denial of Knapp's motion for summary judgment and the granting of Grass's motion for summary judgment for the reasons set out below.

## I. BACKGROUND

By a letter dated April 7, 2011, Grass requested that Knapp "make its records, books, and reports available for inspection and copying at its principal office located at 1401 E. Eighth Street, Weslaco, Texas 78596 during regular business hours." Grass stated that he was "willing to pay a reasonable fee for said copies." Grass also requested to view and copy documents from Valley Baptist Hospital, Mid Valley Physicians Association, and Knapp Medical Center Foundation (the "Foundation").

On March 28, 2011, Knapp filed a petition for declaratory relief asking the trial court to declare that it is exempt from any requirement to produce the documents requested by Grass pursuant to section 22.353 of the Texas Business Organizations Code. Knapp argued that it is "a not for profit corporation that does not intend to solicit and receive and does not actually raise or receive during a fiscal year contributions from the public in an amount exceeding $10,000." Grass filed a general denial and claimed the affirmative defense of estoppel based on public policy. Grass specifically argued that Knapp should be estopped from claiming the benefits of the exemption because it used a separate entity, the Foundation, to "solicit and receive funds over $10,000 from members of the public."

Grass then filed his motion for summary judgment. In his motion, Grass asserted that Knapp admitted that the Foundation "solicits and receives donations in from the

2

public, implying that [the Foundation] would be subject to the recordkeeping and disclosure requirements of [section 22.353]." Grass stated that pursuant to Knapp's publicly available IRS form 990, the Foundation is "operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of" Knapp. He further stated that the Foundation had provided $321,600 of support to Knapp in 2008.[1] Grass attached to his motion for summary judgment, an IRS form showing that the Foundation gave Knapp $321,600 in 2008.

Knapp filed an amended petition for declaratory judgment on July 19, 2011, again requesting a declaration that it is exempt from disclosure requirements pursuant to section 22.353. Knapp then requested, in the alternative, that if the trial court found that Knapp was not exempt, for the trial court to declare which documents must be produced because Grass's request was "overbroad, vague, burdensome, and not authorized by, or subject to, the statute." Knapp then filed its motion for summary judgment on the basis that "the evidence shows that [it] falls within [the] statutory exemption" and that there was no basis in the statute for Grass's estoppel argument. To its motion for summary judgment, Knapp attached an affidavit from James Summersett III, stating that Knapp "does not intend to solicit and receive contributions from the public in an amount exceeding $10,000." Summersett averred that the Foundation "does not own the assets, or control the operations of Knapp" and Knapp "does not own the assets, or control the operations" of the Foundation.

In his first amended answer and special exception, Grass filed a general denial and invoked the affirmative defense of estoppel based on public policy. Grass then

---

[1] The trial court granted Knapp Medical Center's objections to an affidavit written by Patricia Fogarty that Grass attached to his motion for summary judgment.

3

responded to Knapp's amended pleading by specially excepting to its claims that some of the requested documents are confidential and that his request was overbroad, vague, burdensome, and not authorized by, or subject to, the statute. Knapp then filed its IRS tax form 990 with the trial court.

The trial court denied Knapp's motion for summary judgment and granted Grass's motion for summary judgment. This appeal ensued.

## II.   STANDARD OF REVIEW

In a traditional motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a; *Nixon v. Mr. Prop. Mgmt Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If the movant's motion and summary judgment proof facially establish a right to judgment as a matter of law, the burden shifts to the non-movant to raise a material fact issue sufficient to defeat summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.); *HBO, A Div. of Time Warner Entm't Co., L.P. v. Harrison*, 983 S.W.2d 31, 35 (Tex. App.—Houston [14th Dist.] 1998, no pet.). In deciding whether a disputed material fact issue precludes summary judgment, we resolve every reasonable inference in favor of the non-movant and take all evidence favorable to it as true. *See Nixon*, 690 S.W.2d at 548–49; *Karl v. Oaks Minor Emergency Clinic*, 826 S.W.2d 791, 794 (Tex. App.—Houston [14th Dist.] 1992, writ denied). If the defendant relies on an affirmative defense to defeat summary judgment, it must come forward with evidence sufficient to raise a genuine issue of material fact on each element of the defense. *Sani v. Powell*, 153 S.W.3d 736, 740 (Tex. App.—Dallas 2005, pet. denied)

4

(citing *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

When a plaintiff moves for summary judgment, it must prove all elements of its cause of action as a matter of law. TEX. R. CIV. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A defendant who conclusively negates at least one of the essential elements of a plaintiff's cause of action is entitled to a summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). Once a defendant establishes its right to summary judgment, the burden then shifts to the plaintiff to come forward with competent controverting summary judgment evidence raising a genuine issue of material fact. *Centeq Realty, Inc.*, 899 S.W.2d at 197. When both sides have moved for summary judgment and one motion is granted and one denied, we determine all questions presented and render the judgment the trial court should have rendered. *Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 583 (Tex. 2002).

## III. DECLARATORY RELIEF

The Declaratory Judgments Act provides a person "whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise with the right to have a court determine" any question of construction or validity arising under

the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder. TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2008). Section 37.002 provides that the statute is to be liberally construed and administered. *Id.* § 37.002(b) (West 2008). The purpose of the declaratory action is to establish existing rights, status, or other legal relationships. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000).

A declaratory judgment is applicable whenever there is a justiciable controversy existing "as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). A trial court has discretion to enter a declaratory judgment as long as it will serve a useful purpose or will terminate the controversy between the parties. *Bright v. Addison*, 171 S.W.3d 588, 606 (Tex. App.—Dallas 2005, pet. denied).

### IV. SECTION 22.355(2)

Section 22.353 of the Texas Business Organizations Code requires a non-profit corporation to keep records, books, and annual reports of the non-profit corporation's financial activity and to make these records available to the public for its inspection and copying at the corporation's principal office. *See* TEX. BUS. ORG. CODE ANN. § 22.353. As stated by the majority, section 22.353 is a re-codification of article 1396–2.23A section C of the Texas Civil Statutes. *See* Acts 2003, 78th Leg., R.S., ch. 182 § 1, 2003 Tex. Sess. Law. Serv. Ch 182 (H.B. 1156) (West). The intent of article 1396–2.23A, as stated by the Austin Court of Appeals in *Texas Appellate Practice & Educ. Resource Ctr. v. Patterson*, 902 S.W.2d 686, 689 (Tex. App.—Austin 1995, writ denied) and the Texas Supreme Court in *In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d

6

371, 381 (Tex. 1998), was "to remedy a specific problem: the lack of accountability regarding a non-profit corporation's use of funds solicited from the public."

Section 22.355(2) states that "a corporation that does not intend to solicit and receive and does not actually raise or receive during a fiscal year contributions in an amount exceeding $ 10,000 from a source other than its own membership" is exempt from keeping records of its financial documents and making those records available to the public for inspection and copying. *See id.* § 22.355(2). The predecessor to section 22.355(2) exempted "a corporation which [did] not intend to solicit and receive and [did] not actually raise or receive contributions from sources other than its own membership in excess of $ 10,000 during a fiscal year" from having to disclose its financial records to the public. *See Patterson*, 902 S.W.2d at 687.

## V. PATTERSON

In *Patterson*, the Texas Appellate Practice and Educational Resource Center (the "Resource Center") appealed from an order granting a writ of mandamus ordering it to make available all of its records, books, and annual reports of financial activity for inspection and copying to Jerry Paterson. *Id.* at 686–87. The Resource Center argued that because it did not receive "contributions," it was exempt from providing its financial records to the public for inspection and copying. *Id.* at 688.

The Austin Court of Appeals determined that its disposition of the case was dependent on the meaning of the word "contributions" as used in the statute. *Id.* The court concluded that the statute was ambiguous, requiring it to ascertain the legislative intent in enacting the statute. *Id.* The court noted, in pertinent part, that the background portion of the history section of the bill analysis stated it was "a major recommendation

7

from the study" that non-profit organizations that solicit funds from the public should be required "to keep adequate records showing how the funds were actually being used." *Id.* "The bill analysis also reveal[ed] the purpose of the bill" was to require non-profit corporations "soliciting funds from the public to keep certain financial records." *Id.*

The court then determined that the intent of the statute was "to remedy a specific problem: the lack of accountability regarding a non-profit corporation's use of funds solicited from the public." *Id.* at 689; *see In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 381 (Tex. 1998). The court concluded that the legislative purpose was to make non-profit corporations accountable for donations solicited from the public and "[i]n absence of a problem, there is no need for a remedy." *Id.* The court then concluded that "[w]hen a non[-]profit corporation received grant funding, i.e., from the federal government or from the IOLTA ('Interest on Lawyer's Trust Accounts') fund of the Texas Bar Association, the statute is unnecessary because the terms of the grant and the grantor's oversight provide the means of holding the corporation accountable for the use of grant funds." *Id.* Based on its interpretation of the legislative intent behind the public disclosure statute, the court of appeals held that "the term 'contributions' means funds solicited from the general public and does not cover grant funding or donations of in-kind services." *Id.*

## VI. DISCUSSION

The majority acknowledges that the *Patterson* court reasoned that the legislative intent behind the statute was to provide transparency, and the majority also agrees with *Patterson* that the word "contributions" does not include grant funding from entities with the power of grant oversight providing "the means of holding the corporation

8

accountable for the use of grant funds." *Id.* I, too, agree that transparency was the legislature's intent when it enacted section 22.353 and that when a non-profit receives grants from grantors with the power to review how those grant funds are used, public disclosure is unnecessary. *See id.* However, I disagree with the majority's conclusion that in this case, Knapp does not receive "contributions" because "the grantor's oversight provides the means of holding the corporation accountable for the use of the grant finds."

In this case, the summary judgment evidence shows that the Foundation receives money from the public and then transfers that money to Knapp. In its tax records, Knapp stated that it "earns revenues by providing inpatient, outpatient, emergency room, and physician services to patients living in the mid-Rio Grande Valley of South Texas" and that the Foundation "is a fund-raising organization for the medical center [and] the medical center is the sole member of the Foundation." In its "Schedule O (Form 990)," the Foundation provided supplementation to its tax form stating, among other things, that "Knapp Medical Center's Board approves all directors elected by [the Foundation's] Board and any changes made to the organizations bylaws." The Schedule O Form also stated that "Knapp Medical Center is the sole member of [the Foundation]." Knapp provided no summary judgment evidence regarding how the Foundation provided oversight of the money given to Knapp or how the Foundation held Knapp accountable for the use of the grant funds.

The facts of this case are distinguishable from the facts in *Patterson*. In *Patterson*, there was no evidence presented that the non-profit corporation had any control over who would be elected as directors of the entities providing the grants or that

9

the non-profit corporation had the ability to approve or disapprove any changes made to the granting entities' bylaws. Moreover, the grants in *Patterson* were given to the non-profit corporation by entities that were completely separate from it and that were not created to benefit its sole member—the non-profit corporation. Thus, I would conclude that unlike the non-profit corporation in *Patterson*, which accepted grants from entirely separate and unrelated entities, Knapp has found a way to circumvent the legislature's intent of transparency by receiving funds from the Foundation—an entity created for the sole purpose of providing public funding to Knapp.[2]

Under the principles announced in *Patterson*, to meet its summary judgment burden, Knapp was required to show that it does not receive "contributions." In order to do so, Knapp had the burden of showing that it did not receive money from the public. Here, there was no evidence presented that the Foundation provided oversight of the money it collected from the public and then gave to Knapp. Therefore, I would conclude that the trial court correctly denied summary judgment declaring that Knapp is exempt from section 22.353. For the same reason, the trial court properly granted Grass's motion for summary judgment requesting that the trial court deny declaratory relief to Knapp.

In *Patterson*, the court did not focus on whether the grants came from related or unrelated entities. In fact, there is no discussion regarding "piercing the corporate veil" in *Patterson*. Instead, the focus of the *Patterson* court was on the issue of transparency and whether the grantors in that case had oversight of the funds given to the non-profit corporation. The court concluded that because there was oversight, the statute

_____

[2] The entities in *Patterson* were not created for the sole purpose of providing grants to the non-profit corporation in that case.

10

requiring disclosure of financial records to the public was unnecessary. Here, I would conclude that there is no evidence of oversight. Thus, I also disagree with the majority's conclusion that we must find that the corporate veil has been pierced before determining whether Knapp received "contributions." However, assuming that piercing the corporate veil is required in this case, I would find that there is evidence that the corporate veil should be pierced or at the very least that a fact issue has been raised in that regard.

There are various ways that courts find piercing of the corporate veil, such as in the theory of alter ego. *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986); *see Gibraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1293 (5th Cir. 1988) (citing *id.*). Under the alter ego theory, the corporation is organized and operated as a mere tool or business conduit of another corporation. *Castleberry*, 721 S.W.2d at 272; *see Gibraltar Sav.*, 860 F.2d at 1293. The majority concludes that because the Foundation and Knapp are separate entities, the corporate veil cannot be pierced. I agree that the corporate veil in this case cannot be pierced under an alter ego theory. However, I do not agree with the majority that Grass claimed that the Foundation is Knapp's alter ego.

Instead, it appears to me that Grass's claim is that "a sham to perpetrate a fraud" has occurred because the Foundation is a sham non-profit organization set up to circumvent section 22.353.[3] *See Castleberry v*, 721 S.W.2d at 272. A sham to perpetrate a fraud can be found even when two entities have observed all corporate formalities of separateness, as the majority has found in this case. *See id.* at 271–72. This theory may be applied when a corporation wishes to circumvent a statute, as

---

[3] Because disregarding the corporate fiction is an equitable doctrine, Texas takes a flexible fact-specific approach focusing on equity. *Castleberry v. Branscum*, 721 S.W.2d 270, 273 (Tex. 1986).

11

alleged here. *See id.* at 272. When the theory is that a sham to perpetrate a fraud has occurred, "neither fraud nor an intent to defraud need be shown as a prerequisite to disregarding the corporate entity." *Id.* The party claiming that the corporation is perpetrating a fraud need only show that the separate corporation's existence would bring about an inequitable result. *Id.* at 273. The question of injustice or inequity is a question of fact and common sense. *Id.* Based on the evidence presented, I would conclude as a matter of law that a separate entity, the Foundation, was created in order to allow Knapp to indirectly solicit funds from the public; thus, circumventing the legislative intent of section 22.353.[4] For these reasons, I respectfully dissent.[5]

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
6th day of June, 2013.

---

[4] Grass also claimed estoppel as a defense in his pleading; Knapp did not address this defense in its motion for summary judgment.

[5] I am of the opinion that at the very least, the summary judgment evidence creates a fact issue regarding whether a sham to perpetrate a fraud has occurred. *Castleberry*, 721 S.W.2d at 273. Thus, the trial court properly denied Knapp's motion for summary judgment on that ground.