**Affirmed and Memorandum Opinion filed June 27, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00860-CV

---

## MARY T. BOWDEN, M.D., Appellant

## V.

## THE METHODIST HOSPITAL AND TMH PHYSICIAN ORGANIZATION, Appellees

---

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2022-02976**

---

## MEMORANDUM OPINION

Appellant-physician and her media consultant filed a petition against a hospital and physician group to examine their non-profit records pursuant to a provision of the Texas Business Organizations Code. Appellees moved for summary judgment on their statutory exemption affirmative defense, contending that the two non-profit entities were exempt under another provision of the Code. The trial court granted the summary-judgment motion concluding that the hospital

and physician group had proven their status under the statutory exemption. The physician now appeals. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant, Mary Tally Bowden is an Ear, Nose, and Throat doctor who practices in Houston. When the COVID-19 pandemic began, Bowden began speaking out online against COVID-19 vaccines and began treating COVID-19 patients with Ivermectin. In June of 2021, appellee, The Methodist Hospital ("Methodist"),[1] suspended and terminated over 150 employees who refused to receive a COVID-19 vaccine. In November of 2021, Methodist suspended Bowden's privileges due to disagreements with Bowden about her use and advocacy of Ivermectin for the early treatment of COVOD-19 and her objections to Methodist's vaccination mandate. Methodist also publicly responded to Bowden's views on Twitter, calling her views "dangerous misinformation."

In November 2021, Bowden and her media consultant, Dolcefino Communications ("Dolcefino"), sent a series of demands for access to financial records of Methodist and its associated physician group, appellee TMH Physician Organization, ("Physician Organization") (appellees are collectively referred to as the Methodist Parties). Most of the requested information relates to Methodist's COVID-19 related care and associated financial data. These requests included among others the following:

• Any and all financial records pertaining to the response of Methodist to the COVID-19 pandemic.

• Financial documents detailing all revenue generated at Methodist through the COVID-19 vaccination program.

• Financial documents detailing all revenue generated for the treatment and care of any COVID-19 patients at Methodist since

---

[1] The Methodist Hospital is also known as "Houston Methodist Hospital."

2

March 1, 2019.

• Financial documents, including contracts and ledgers, detailing any payments from any pharmaceutical company for the treatment of COVID-19 or use of specific drugs for COVID-19 patients since March 1, 2019, including vaccines.

• Current compensation and identities of the top ten executives of Methodist.

• Any additional 990 tax returns filed by Methodist after the 2019 tax return.

• Documents detailing any bonuses provided to employees of Methodist since March 1, 2019.

• The general ledger detailing expenditures from any money received from Moderna, Pfizer, and Johnson & Johnson since March 1, 2020.

• The general ledger detailing expenditures from any government agency for COVID-19 since March 1, 2020.

• Records detailing compensation of anyone employed by Methodist who makes over $200,000 annually. These records should include names of persons and total compensation.

• Documents detailing any bonuses received by any employee of Methodist that makes over $200,000 annually since March 1, 2020.

• Any expenditures from any grants received related to COVID-19 since March 1, 2020.

• Any travel, food, and/or entertainment expenditures of Dr. Marc Boom since March 1, 2020.

• Documents detailing expenditures from any grant funds received by the federal government or sent on any Medicare or Medicaid patients since March 1, 2020.

Bowden and Dolcefino cited section 22.353 of the Texas Business Organizations Code as the legal basis for all of their requests. The Methodist Parties did not comply with the request.

Thereafter, Bowden and Dolcefino petitioned the trial court for a writ of mandamus compelling the Methodist Parties to "permit Plaintiffs . . . to examine

3

the books, records, minutes, and documents described herein, and to make extracts and copies." Bowden later served defendants with a request for production of documents, seeking much of the same information as the mandamus petition.[2]

Methodist and the Physician Organization answered, asserting an affirmative defense based on their exemption-status under Chapter 22. They voluntarily produced some documents, including tax records, moved for a protective order to prevent further discovery, and filed a motion for traditional summary judgment.

On June 27, 2022, the trial court heard arguments on the Methodist Parties' motion for summary judgment and Bowden's objections to defendants' summary-judgment evidence. The court made no explicit rulings on the objections to the summary-judgment evidence.[3]

On July 13, 2022, the trial court signed an order granting the Motion for Protection, and, on August 16, 2022, signed its order granting the Methodist Parties' motion for summary judgment and dismissing Dolcefino's and Bowden's claims with prejudice.[4] The order states:

> The Court finds that the summary judgment record conclusively establishes that neither Defendant solicits funds from the public; instead, any public gifts or donations are provided to a separate entity, The Methodist Hospital Foundation, which in turn provides funding to

---

[2] The live pleading for purposes of this appeal is Plaintiff's Second Amended Petition to Examine Non-Profit Records Pursuant to Texas Business Organizations Code Section 22.353 and Petition for Declaratory Judgment ("Petition"), which was filed on February 9, 2022.

[3] On the day of the summary-judgment hearing, Dolcefino and Bowden filed a third amended petition, adding allegations that the Foundation acts as the agent of Methodist and the Physician Organization for purposes of accepting contributions from the public, but withdrew the untimely petition, because Bowden's attorney wanted to move forward with the summary-judgment hearing.

[4] The summary-judgment order operated as a final judgment as it expressly and actually disposed of the only claims in the case, all of the plaintiffs' claims contained in their live pleading against all defendants, Methodist and the Physician Organization.

4

Defendants. Accordingly, Defendants are exempt from the requirements of §22.353.

Dolcefino and Bowden moved to vacate the final summary judgment and for a new trial, which the trial court denied. Only Bowden appeals.

## II. ISSUES AND ANALYSIS

Bowden raises three primary complaints: (1) in her first and second issues, she contends that the trial court erred in granting the motion for summary judgment dismissing her two claims (for public disclosure and for declaratory judgment); (2) in her third and fourth issues, she contends that the trial court in erred in overruling her objections to the affidavit the Methodist Parties used to support their summary-judgment motion, and (3) in her fifth issue, she contends that trial court erred in granting the Methodist Parties' motion for protection.

### A. Did the trial court abuse its discretion in granting the Methodist Parties' traditional motion for summary judgment based on their exemption-status affirmative defense?

We first consider whether the trial court erred in granting the motion for summary judgment on her statutory claims for public disclosure and for declaratory judgment.

We review a grant of summary judgment under a de novo standard of review. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 675-76 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *see also* Tex. R. Civ. P. 166a(c). To be entitled to traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or

5

conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

The Methodist Parties summary judgment set out to prove conclusively their status under one of Chapter 22's express exemptions to the required disclosure. The exemption is provided in Section 22.355(2) which states:

> (2) a [nonprofit] corporation that does not intend to solicit and receive and does not actually raise or receive during a fiscal year contributions in an amount exceeding $10,000 from a source other than its own membership

In support of their motion, the Methodist Parties included an affidavit from Edward L. Tyrrell who stated:

> Neither Houston Methodist nor TMH Physician Organization solicits funds from the general public. Likewise, neither Houston Methodist nor TMH Physician Organization receives funds from the general public.

The Tyrrell Affidavit also included statements authenticating a corporate reference manual and tax records (IRS Form 990s) attached to his affidavit showing that during the relevant timeframe the Methodist Parties received revenue from related organizations, government grants, professional fees, and patient care services, but not from the general public.

The Corporate Reference Manual illustrates contributions from the public are received by a separate nonprofit foundation, and that Methodist then receives grants from that foundation: "Houston Methodist Hospital Foundation (the

6

Foundation) receives all private donations that are for the benefit of research, education, and the furtherance of the mission of Methodist."

As the Methodist Parties note, this evidence was uncontroverted and arguably supported by evidence Bowden attached to her motion. Specifically, she included a webpage which stated, "[T]he foundation accepts all gifts on behalf of Houston Methodist for the benefit of the organization. The foundation helps to accomplish institutional priorities through fundraising, gift management and stewardship."

Under the Methodist Parties' construction of the exemption—which interprets the word "contribution" as distinguished from grants from governmental, private or related institutions—the summary-judgment evidence conclusively established that the Methodist Parties were exempt under section 22.355(2) from public disclosure because they are funded by the Foundation and government grants and do not raise or receive any contributions from the public.

Bowden contends that the exemption's use of the word "contribution" applies a meaning consistent with that provided in *Black's Law Dictionary*, which refers more broadly to "an amount of money one gives in order to help pay for something." See CONTRIBUTION, *Black's Law Dictionary* (11th ed. 2019). Upon this interpretation, Bowden argues that the definition is not limited to funds received from the public. Bowden also contends that the meaning the Methodist Parties assign to "contribution" would render the provision meaningless in the context of the phrase "source other than its own membership".

Thus, we consider this threshold issue of statutory construction. These are questions of law to which we apply the de novo standard of review. *See Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 647 (Tex. 2020). In construing a statute, our primary objective is to give effect to the Legislature's intent as expressed in the

7

statute's language. *In re Tex. Educ. Agency*, 619 S.W.3d 679, 687 (Tex. 2021) (orig. proceeding). We begin with the statute's text, for that is the most reliable guide to the Legislature's intent. *See Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019); *Sunstate Equip. Co., LLC v. Hegar*, 601 S.W.3d 685, 690 (Tex. 2020). In doing so, we enforce the plain meaning of statutory text, informed by its context. *Hegar v. Health Care Serv. Corp.*, 652 S.W.3d 39, 43 (Tex. 2022) ("Words that in isolation are amenable to two textually permissible interpretations are often not ambiguous in context.").[5]

By its text section 22.355(2) exempts "a corporation that does not intend to solicit and receive and does not actually raise or receive during a fiscal year contributions in an amount exceeding $10,000 from a source other than its own membership." The context in which the provision appears is within statutory scheme governing nonprofits. *See generally* Tex. Bus. Orgs. Code, ch. 22. The issue at hand calls us to consider whether the word "contribution" includes grants and similar revenue, or whether the word carries a narrower meaning limited to gifts and donations from individuals who are not members or the general public.

Giving the words in the statute their plain and ordinary meaning guided by their context we observe that the noun "contributions" is activated through three verbs: solicit, receive, and raise. Interpreting "contributions" in context therefore requires the meaning that best accords with each of these predicates.

While the verb "receive" in isolation is sufficiently general that a nonprofit can naturally be said to *receive contributions* from the public *and* receive contributions in the form of grants from governmental related or private grantors,

---

[5] Although relevant authority exist which we discuss below—neither this court nor the supreme court has construed the exemption in its *current* form; and therefore, this is an issue of first impression.

in section 22.355(2), "receive" is connected to both "solicit" and "raise" and therefore must be understood in that context. In ordinary speech, the word "contributions" when used in conjunction with the verbs "solicit" and "raise", refers to funds solicited or funds raised *in the form of charitable donations*, however large or small, from outside the organization, i.e., funds from the public. On the other hand, *grants* from governmental, related or private grantors" are not said to be *solicited* or *raised*, but are applied for, offered, awarded and accepted. In short, the plain meaning of the word "contributions" in section 22.355(2) as informed by the context in which it is used—arising from solicitation and fundraising—does not include funds awarded by grants from governmental, related or private grantors.

Bowden argues that "contributions" cannot mean "gifts or donations from the general public" because section 22.355(2) contemplates contributions to a corporation "from a source other than its own membership." According to Bowden, our interpretation makes "from its own membership" surplusage and renders the statute "internally inconsistent." However, this qualifying language—"from a source other than its own membership"—further shows that section 22.353(2) reaches only nonprofits that receive money from the general public. Had the Legislature intended to reach nonprofits regardless of the nature of the contributions, a qualifier would have been unnecessary. If the statute were simply about transparency for transparency's sake, the Legislature would not have excluded contributions from members, which makes it easier for a nonprofit to be exempt from disclosure.

Consequently, we conclude that the provision provides an exemption from Chapter 22's disclosure requirement for non-profit corporations that do not solicit or receive funds from the general public.

Consistent with our holding we note that one court interpreting section 22.355(2) (following others interpreting its predecessor statute) concluded that "contributions" means "funds solicited from the general public" and does not include grants from governments or private entities. *See Knapp Med. Ctr., Inc. v. Grass*, 443 S.W.3d 182, 189 (Tex. App.—Corpus Christi 2013, pet. denied) (*quoting Tex. Appellate Practice & Educ. Res. Ctr. v. Patterson*, 902 S.W.2d 686, 688-89 (Tex. App.—Austin 1995, writ denied)); *In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 381 (Tex. 1998) (BACALA). Each case concludes that Subchapter H's goal is narrow—to provide the public with a means of oversight for funds they contribute to nonprofit corporations.

The Corpus Christi Court of Appeals addressed section 22.353 on facts that are materially identical to this case. *Knapp Med. Ctr.*, 443 S.W.3d at 189-90. Though it is the only court to interpret the instant code provision, the *Knapp* court took its cues from two previous decisions, from Austin (*Patterson*)[6] and the Supreme Court (*BACALA*),[7] interpreting the predecessor statute.

---

[6] In *Patterson*, the Austin Court of Appeals interpreted the predecessor provisions in the now repealed Non-Profit Corporation Act, article 1396-2.23A. 902 S.W.2d at 687. A Texas senator sued the Texas Appellate Practice and Educational Resource Center (the Resource Center) to compel disclosure of information related to the Resource Center's representation of death row inmates and public relations campaigns against the death penalty in Texas. The district court ordered disclosure. The Resource Center appealed, arguing that "the term 'contributions' is not intended to include grants received through federal appropriations or from state and private foundations" *Id*. at 688. The Austin court agreed. The court found "contributions" to be ambiguous and so turned to "rules of statutory construction" and examined "several factors, including the object sought to be attained (the purpose), the circumstances under which the statute was enacted, the legislative history, and the consequences of a particular construction." Id. The court concluded that "contributions" should be construed narrowly to effect the evident goal of the statute: eliminating a "lack of accountability." *Id.* at 689. Nonprofits do not lack accountability to organizations bestowing grants because grants, by their nature, usually come with strings attached, whereas donations from the general public do not. Thus, "the term 'contributions' means funds solicited from the general public and does not cover grant funding." *Id.*

[7] The Texas Supreme Court later approved and adopted *Patterson*'s analysis that led to a narrow

In *Knapp*, as here, the hospital moved for summary judgment and offered a hospital executive's affidavit to prove that the hospital "does not intend to solicit and receive contributions from the public in an amount exceeding $10,000[,]" and that the hospital "and the Foundation are separate corporations and that the Foundation solicits, receives, and accepts gifts." *Id*. at 185, 189.

The Corpus Christi court began by observing that section 22.353 is "essentially a re-codification of the" provisions of the Texas Non-Profit Corporation Act at issue in *Patterson*. *Id*. at 188. The court recognized that the original statute was aimed at "open[ing] the windows of transparency to non-profit organizations who solicited money from the public by keeping financial records on file and opening those records for public inspection, if so requested." *Id*. Because "the purpose and language of the current section 22.353 exemption is unchanged from its article 1396-2.23A(E)(2) predecessor," the court "extend[ed] the *Patterson* holding to this case and applied the principles herein." *Id*. at 189.[8]

The Corpus Christi court also rejected an argument like that raised today by

construction of "contributions." In *BACALA*, taxpayers sought financial information from a nonprofit, including the identities of its contributors. 982 S.W.2d at 380. Although the nonprofit did not argue it was exempt from article 1396-2.23A, it did argue that the public disclosure requirement was unconstitutional insofar as it compelled disclosure of the identities of its contributors.

The Supreme Court construed the Non-Profit Corporation Act to avoid what it saw as "constitutional infirmities," and held that it does not compel the disclosure of the names of contributors. Id. at 381. The *BACALA* Court agreed with *Patterson* that the Legislature designed the law "to remedy a specific problem: the lack of accountability regarding a non-profit corporation's use of funds solicited from the public" by "expos[ing] the nature of the expenditures of that money once received from the public." *Id*. at 381; *see also Gaughan v. Nat'l Cutting Horse Ass'n*, 351 S.W.3d 408, 415 (Tex. App.—Fort Worth 2011, pet. denied) (following *BACALA*, narrowly construing the statute).

[8] Once appellate courts construe a statute and the Legislature re-enacts or codifies that statute without substantial change, we presume the Legislature has adopted the judicial interpretation. *Morris v. Ponce*, 584 S.W.3d 922, 926 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) citing *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 748 (Tex. 2012)

Bowden to treat the hospital and its foundation as a single entity. The court explained that the fact that the foundation there was incorporated for "the sole benefit of, and the specific purpose of supporting" the hospital "does not support or establish any theory of liability to pierce the corporate veil." *Id*. at 189.

In addition to challenging the interpretation of the statute, Bowden has asserted some arguments to the trial court's grant of summary judgment notwithstanding the construction of the statute as it now stands.

Bowden first emphasizes a press release from Methodist's website stating, "Houston Methodist has received an anonymous gift for $50 million" to support a variety of programs and services across the hospital system. According to Bowden, this press release creates a fact issue as to whether Methodist "solicits, raises, or receives contributions from the general public, even if those contributions are then transferred to the foundation." The press release is a general public announcement that does not address which Methodist entity received a gift, and therefore does not raise a fact issue as to whether either of the Methodist Parties received a contribution that disqualified their exemption status.

Bowden also argues that "the Foundation acted as [Methodist]'s agent for receiving donations to [Methodist] by the public." Bowden has not properly preserved this argument as his live pleadings do not include any agency theory, nor do we conclude that Chapter 22 provides that one nonprofit takes on disclosure obligations because a separate related entity accepts contributions from the public that later become grants. There is no textual basis in sections 22.353 or 22.355 for disregarding separate entity structures or imputing disclosure obligations. *Cf.* Tex. Bus. Orgs. Code § 22.001(3) (defining "corporation" without referencing related entities or agents); *see Tamasy v. Lone Star Coll. Sys.*, 635 S.W.3d 702, 712 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ("[E]very word excluded from a statute

12

must also be presumed to have been excluded for a purpose."); *see also Knapp Med. Ctr.*, 443 S.W.3d at 189-90 (rejecting veil piercing argument as basis to impute disclosure requirements onto separate entity not subject to section 22.353).

Bowden also spotlights the word "raise," contending that the trial court "ignored the requirement for exemption that the corporation 'does not raise . . . contributions in an amount exceeding $10,000 from a source other than its own membership.'" According to Bowden, "raise" is distinct from "receive," and means "to gather or collect." *See Black's Law Dictionary* (11th ed. 2019)). Bowden says that while the Foundation "took legal custody of th[e] donations," it was "[the Methodist Parties] who 'collected or gathered'" them. While we disagree with her conclusion, we agree that the alternate terms in the statute are likely intended to address among other scenarios those involving nonprofits, like the Foundation, who operate as fundraisers and foundations for other nonprofits. We interpret the phrase "actually raise" in its context, to stand on the other side of the coin with the preceding phrase "intend to solicit", so that "raise" means to raise, or to gather or collect*, solicited-contributions*. It would be illogical for example to deny exemption status to nonprofit fundraisers who intended to but did not *successfully solicit*, or actually raise, any funds (or receive any). That is, a nonprofit can intend to solicit funds without actually raising them. But conversely, as with Methodist, when a nonprofit does not even *solicit the funds* from the general public (whether for itself or another entity), that nonprofit will never have actually raised any solicited-funds from the general public. Thus the Tyrell Affidavit is not deficient for having not specifically denied that the Methodist parties *raised* contributions; it implicitly did so by denying that they never solicit funds from the general public.

Under the applicable standard of review, because evidence presented to the trial court is conclusive, and Bowden failed to raise a genuine issue of material

fact, we conclude the trial court did not err in granting the motion for summary judgment. We overrule Bowden's first and second issues.

**B. Did the trial court err in overruling Bowden's objections to the Methodist Parties' summary-judgment evidence?**

We next consider whether the trial judge abused her discretion when she implicitly denied Bowden's objections to the Tyrrell Affidavit. In her summary-judgment response, Bowden included a section entitled, "Objections to Inadmissible Evidence." The section presents three interrelated objections: First, Bowden objected that none of the evidence submitted by the Methodist Parties to support their motion, i.e. the Tyrrell Affidavit *and* the records attached to the affidavit, were admissible because they were hearsay. The second and related objection was that Tyrell did "not include any facts indicating that he has personal knowledge." Finally, she contends Tyrell Affidavit is conclusory in that it recites legal boilerplate and "does not attempt to explain the role of the Foundation or Methodist's public fundraising statements."

A trial court's ruling on an objection to summary-judgment evidence is reviewed for an abuse of discretion. *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997).

As a prerequisite to presenting a complaint for appellate review, the record must demonstrate that the trial court either expressly or implicitly ruled on the objection or refused to rule on the objection and the complainant objected to that refusal. *See* Tex. R. App. P. 33.1(a); *Trevino v. City of Pearland*, 531 S.W.3d 290, 299–300 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also Wells Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 317 (Tex. App.—San Antonio 2000, no pet.) ("[A] trial court's ruling on an objection to summary-judgment evidence is not implicit in its ruling on the motion for summary judgment; a ruling on the

14

objection is simply 'not capable of being understood' from the ruling on the motion for summary judgment."). "Obtaining an express ruling on an objection to summary judgment evidence is necessary to preserve error for appellate review." *Leonard v. Knight*, 551 S.W.3d 905, 913 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018). Implicit rulings on objections to summary-judgment evidence must be "clear" in the record. *Seim*, 551 S.W.3d at 166 (holding trial court's recital stating that it "considered the motion, briefs, all responses, and all competent summary-judgment evidence" does not implicitly sustain objections to summary-judgment evidence.

Bowden concedes that the trial court did not expressly overrule any of her summary-judgment objections but contends the ruling was made implicitly in the court's recital:

> Having considered Defendants' Motion for Traditional Summary Judgment (the "Motion"), any responses and replies, other pleadings, papers, evidence on file, and the arguments of counsel, if any, the Court is of the opinion that the Motion should be GRANTED.

The language in this recital does not as Bowden suggests, imply that the trial court overruled her objections, and nor does this recital resemble the recital's language in the case she cites where our sister court came to the opposite conclusion. *See Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 179 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (reviewing a trial judge's penned notation: "considered ***all*** of the summary judgment presented") (emphasis added). The fact that the court considered "evidence on file" tells us nothing about *what* evidence on file it considered.

Because appellant did not obtain a ruling on her hearsay and "personal knowledge" objections they are not preserved. *See also Rogers v. Houston Cmty. Coll.*, No. 14-21-00557-CV, 2023 WL 2423144, at *2 (Tex. App.—Houston [14th

Dist.] Mar. 9, 2023, no pet.) (collecting cases). We still consider the merits of her third objection, that the affidavit was conclusory—which qualifies as a "substantive" objection and cannot be waived. *See Ortega v. Cach, LLC*, 396 S.W.3d 622, 627 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("A party may raise an objection that an affidavit is conclusory for the first time on appeal")

Bowden contends the Tyrell Affidavit is conclusory and thus not evidence because (1) it recites "rote legal conclusions" and (2) it "does not attempt to explain the role of the Foundation or Methodist's public fundraising statements."

Bowden's challenge based on her "conclusory" objection provide us little direction for purposes of review. *Walston v. Anglo-Dutch Petroleum (Tenge) LLC*, 2009 WL 2176320, at *8 n.8 (Tex. App.—Houston [14th Dist.] July 23, 2009, no pet.). Having not identified what statement or statements are boilerplate and conclusory she has waived the complaint. *Id.*

Even if Bowden has assigned error on her conclusory challenge, though the Tyrell Affidavit provides statements that incorporate the language of the exemption statute, no sentence in the affidavit includes "rote legal conclusions", or lacks necessary support. The trial court could have reasonably considered the evidence attached to the affidavit as support for statements in Tyrell's affidavit. *Morales v. JP Morgan Chase Bank, N.A.*, 2011 WL 2624047, at *5 (Tex. App.—Houston [1st Dist.] June 30, 2011, no pet.) (documents attached to petition supplied factual basis for statements in affidavit, saving affidavit from being impermissibly conclusory); *see also 8920 Corp. v. Alief Alamo Bank*, 722 S.W.2d 718, 720 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (same).

As to the latter proposition, Bowden provides no further explanation factually or legally to demonstrate why statements about the role of the Foundation or statements addressing Methodist's public fundraising statement render it

conclusory. To the extent Bowden is referring to statements contained in attachments to her response that she believes would be necessary to rebut a fact issue she believes she raised, the trial court could have reasonably concluded no such fact issue had been raised. The Methodist parties were not required to address these topics in support of proving their exemption.

We therefore overrule Bowden's third and fourth issues.

## C. Did the trial court err when it did not permit further discovery?

Finally, Bowden complains that the trial erred when it granted the Methodist Parties' motion for protective order.

The trial court has broad discretion in granting a protective order. *In re Eurecat US, Inc.*, 425 S.W.3d at 582. To justify a protective order, a party seeking to avoid discovery must produce sufficient facts to show particular, specific, and demonstrable injury. *Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 466 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). To decide whether a protective order is appropriate, a trial court balances the parties' competing interests. *See Garcia v. Peeples*, 734 S.W.2d 343, 348 (Tex. 1987) (holding trial court should have balanced parties' competing needs before granting protective order). The trial court's balancing test is codified in Texas Rule of Civil Procedure 192.4(b). Under that rule, discovery "should be limited" if the court determines that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Tex. R. Civ. P. 192.4(b). The court may also consider harm that the resisting party might suffer as a result of the discovery. *See* Tex. R. Civ. P. 192.6(b) (authorizing court to protect movant from consequences of requested discovery including harassment or invasion of property

rights); *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322-23 (Tex. 2009) (noting harm party resisting discovery might suffer as result of revealing private conversations, trade secrets, and privileged and other confidential information); *see also In re Houstonian Campus, L.L.C.*, 312 S.W.3d 178, 184 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (considering harm party resisting discovery might suffer as result of revealing members' names).

Prior to the summary-judgment hearing, Bowden and Dolcefino propounded a series of discovery requests. When they filed their motion for summary judgment, the Methodist Parties moved for a protective order seeking to avoid responding to most of these requests.[9]

In their motion the Methodist Parties asserted that Bowden and Dolcefino's requests were "wide-ranging and expansive" and "unnecessary." Highlighting the threshold statutory exemption, the Methodist Parties argued that none of the discovery sought was relevant and that the only facts necessary to resolve this question of statutory interpretation were contained in the public documents and in its own affidavit attached to their motion. The Methodist Parties reported that they voluntarily yielded information to Bowden and Dolcefino they deemed necessary to evaluate the exemption. The Methodist Parties argued alternately that if the court permitted discovery, it "should be limited to the narrow issue of the applicability of Tex. Bus. Org. Code §22.355(2) namely whether Defendants have solicited or received any public contributions in an amount exceeding $10,000."

Bowden argued her requests were necessary to support her summary-judgment response. Bowden also requested a continuance on this basis in her summary-judgment response.

---

[9] They did not move for protection from Request for Production No. 4, for which the Methodist Parties produced Form 990s filed with the Internal Revenue Service in 2020.

Bowden argued that her request for "all documents and communications exchanged between the Methodist parties and any Governmental Entity concerning. . . a Contribution by the Governmental Entity" sought information related to whether certain donations or categories of donations qualify as contributions. Her reasoning was that "[i]f oversight is absent from one or more government grants, then the funds provided under such grants should qualify as a contribution under Section 22.355(2) and defeat Defendants' affirmative defense." The trial court could fairly conclude that these requests were not essential to evaluating the application of the exemption at issue as documents relating to contributions from a governmental entity would not implicate information about funds from the general public, and that even were there a lack of government oversight over such funds, the trial court could have reasonably concluded that Bowden failed to demonstrate a legal or factual basis for how this would convert government funds to funds solicited from or received from the general public, e.g., how this would affect the application of the exemption.

The motion also sought protection from Bowden's requests for leases and management agreements between Methodist's hospitals and their related entities, and from Bowden's requests for copies of Methodist Hospital's Cost Reports submitted to the Centers for Medicare and Medicaid Services and Reports submitted to the Secretary of Health and Human Services as required under the CARES Act. Bowden argued that the requested documents "contain representations regarding charity care and/or unreimbursed services as well as the sources of funds, if any, for which Methodist Hospital recouped some or all of its revenue for those services," which she reasoned were "reasonably calculated to lead to the identification of donations that may be evaluated for whether they qualify as "contributions." The trial court could have fairly rejected this argument,

reasoning that these requests were not essential to evaluating the application of the exemption.

The motion also sought protection from Bowden's requests for information related to the identity of Methodist's members. Bowden believed and argued the discovery of Methodist's members' identity was necessary to account for and distinguish any contributions from the general public. The Methodist Parties provided the trial court with Methodist's Certificate of Merger and Restated and Amended Articles of Formation which declared that it had no members and an affidavit denying it solicited or received contributions from the general public and supporting tax records. Because Bowden presented no affidavit testimony (or other evidence) contradicting Methodist's evidence, the trial court acted within its discretion to conclude that the Methodist Parties' organizational documents and tax records were the best evidence of membership and the sources of funding, such that any discovery concerning the members would be unnecessary and burdensome on the Methodist Parties and not ultimately helpful to Bowden.

In addition, in conducting its Rule 192.4(b) balancing test to this case, the trial court was within its discretion to consider the unique circumstances of the case—that the essence of the lawsuit was to seek discovery of documents and in turn the essence of the Methodist Parties' defense was to seek refuge from such production based on its claimed status under the exemption. While the statute provides no discovery-stay mechanism associated with the exemption, the trial court could have fairly considered in its Rule 192.4(b) analysis that any discovery, not merely overbroad requests or requests for voluminous or sensitive materials, imposed an increased burden on the Methodist Parties who were seeking application of the exemption and protection from public disclosure.

In sum, Bowden's discovery requests presented a burden on the Methodist

Parties, posed a risk of making the exemption futile, were not probative on matters within our construction of the Texas Business Organizations Code, and any documents responsive were not reasonably calculated to lead to information concerning the application of exemption as to the Methodist Parties and thus the outcome of the trial court's ruling on the summary judgment. Thus, we cannot say that trial court abused its discretion by determining that additional discovery would not have aided in the tasks of construing the Texas Business Organizations Code and analyzing the application of the exemption. *See Studer v. Moore*, No. 14-18-00640-CV, 2021 WL 629922, at *3 (Tex. App.—Houston [14th Dist.] Feb. 18, 2021, no pet.) (concluding no error when court granted stay of discovery pending summary-judgment motion); Tex. R. Civ. P. 192.4 (trial court has authority to limit scope of discovery based on needs of case).

We therefore overrule Bowden's fifth stated issue.

### III. CONCLUSION

We affirm the trial court's summary judgment.


/s/    Randy Wilson
       Justice

Panel consists of Justices Jewell, Spain, and Wilson.